795 F.2d 676
 Bankr. L. Rep. P 71,251, 1 UCC Rep.Serv.2d 1187
In the Matter of GRIFFIN RETREADING COMPANY, Debtor.
GRIFFIN RETREADING COMPANY, Appellant,
v.
OLIVER RUBBER COMPANY, Appellee.
 No. 86-5059.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1986.
Decided July 17, 1986.
 
 1
 Elizabeth L. Zerby, Minneapolis, Minn., for appellant.
 
 
 2
 Lauren R. Lonergan, Minneapolis, Minn., for appellee.
 
 
 3
 Before HEANEY and WOLLMAN, Circuit Judges, and BATTEY,* District Judge.
 
 
 4
 BATTEY, District Judge.
 
 
 5
 Griffin Retreading Company, debtor in bankruptcy, filed this appeal from the district court's[1] reversal of an order for summary judgment issued by the bankruptcy court.[2] Oliver Rubber Company had requested reclamation of rubber delivered one day prior to the filing by Griffin of a Chapter 11 bankruptcy petition. In the alternative, should Griffin not be able to redeliver the rubber, Oliver requested an administrative expense claim to the extent of its value. The bankruptcy court conceded to Oliver Rubber Company a right of reclamation under 11 U.S.C. Sec. 546(c) of the Bankruptcy Code, but denied administrative expense treatment in the amount of rubber unavailable for redelivery.
 
 
 6
 The district court, 56 B.R. 239, held that Sec. 546(c) of the Bankruptcy Code did not require a grant of a right to reclaim where the goods were no longer available. The goods had been sold in the ordinary course of business. The court held that the appropriate remedy under Sec. 546(c) was not reclamation, but rather the recovery of the value in the nature of an administrative expense claim to the extent of the value of the goods. The district court accordingly reversed the bankruptcy court and remanded the case for the purpose of granting the administrative expense claim.
 
 
 7
 For the reasons set forth below, we affirm.
 
 
 8
 I. BACKGROUND.
 
 
 9
 Oliver Rubber Company (Oliver) had been a regular supplier of rubber to Griffin Retreading Company (Griffin). Since rubber is a commodity which is not conducive to long-term inventory, Griffin would purchase no more than a usable one-month supply.
 
 
 10
 On April 12, 1984, Griffin ordered 40,000 pounds of ultratuff rubber. This order was delivered on April 22, 1984. On April 18, 1984, Griffin ordered 130,000 pounds of Oliver's ultratuff rubber to take advantage of a volume discount. Approximately ten days later, on April 27, 1984, Griffin contacted Oliver and asked that part of the April 18 order be delivered on May 2 because Griffin would be out of rubber by that time. At the time of that request Griffin had on hand enough rubber to last it until the end of May 1984. On May 2 Oliver delivered 35,000 pounds of rubber to the debtor and the next day Griffin filed a Chapter 11 bankruptcy petition. On May 10, 1984, Oliver sent a mailgram to Griffin demanding return of the rubber delivered on May 2, 1984. The rubber was never returned. At the time Griffin received the mailgram it still had on hand all of the rubber delivered by Oliver on May 2, 1984, which had a value of $27,922.36 as of May 10, 1984.
 
 
 11
 Griffin ignored its obligation to return the rubber pursuant to the notice of reclamation and sold the rubber to its retail outlets in the ordinary course of its business. Thus the rubber was no longer in existence to satisfy the demand for reclamation.
 
 
 12
 A complaint by Oliver was filed on August 20, 1984 (102 days from the date of the demand for reclamation), requesting reclamation[3] of the rubber, or in the alternative, relief in the nature of an administrative expense claim in the amount of the value of the rubber.
 
 
 13
 It is undisputed that on the date of delivery of the rubber Griffin was insolvent.
 
 
 14
 The Citizen's State Bank of St. Louis Park held a valid security interest on after-acquired property of Griffin and accordingly would have attained a security interest in the rubber delivered.
 
 
 15
 II. DISCUSSION.
 
 
 16
 Section 546(c) of the Bankruptcy Code, 11 U.S.C. Sec. 546(c) (1982) provides that the rights and powers of the trustee are subject to the right of the seller of goods, within certain statutory restrictions, to reclaim the goods from a bankrupt buyer. The seller may exercise any statutory or common law right provided by state law. In re Coast Trading Co., Inc., 744 F.2d 686 (8th Cir.1984). Oliver's right of reclamation is defined by Minn.Stat. Sec. 336.2-702(2) and 11 U.S.C. Sec. 546(c).
 
 
 17
 The facts indicate an obvious plan on the part of Griffin to obtain an inventory of rubber in excess of its current needs. The day following delivery (May 3, 1984), Griffin filed a Chapter 11 bankruptcy petition. It was insolvent on the date of delivery (May 2, 1984). When Oliver gave the appropriate notice of reclamation on May 10, 1984, pursuant to Minn.Stat. Sec. 336.2-702, it would have been entitled to exercise its reclamation rights to reclaim the delivered rubber, absent the filing of the bankruptcy petition. 11 U.S.C. Sec. 362(a)[4] effectively prevented Oliver from proceeding with any state action at law based upon its reclamation rights. A remedy remaining for Oliver was to seek a recovery from the trustee in bankruptcy under Bankruptcy Code 11 U.S.C. Sec. 546(c) (1982).
 
 
 18
 Bankruptcy Code Sec. 546(c) (1982)[5] substantially codifies Minn.Stat. Sec. 336.2-702 but refines the statute by requiring the existence of three predicate limitations: (1) the goods must have been sold in the ordinary course of business, (2) the debtor must have been insolvent on the date of delivery, and (3) a timely demand (10 days after delivery) for reclamation must have been made. The three conditions existed in this case.
 
 
 19
 Under Sec. 546(c) (1982), while the reclaiming seller has the right (assuming the predicate conditions are met) to reclaim, the right is not an absolute one. If reclamation is denied the court must choose one of two alternatives. Under Sec. 546(c)(2)(A) the court may treat the claim as an administrative expense priority under Sec. 503(b), or under Sec. 546(c)(2)(B) the court may secure such claim by a lien. Such lien is in the nature of a lien on the assets of the bankrupt estate, including the goods so delivered. In re Coast Trading Co., Inc., 744 F.2d 686 at 692; In re Flagstaff Food Service Corp., 14 B.R. 462 at 467.
 
 
 20
 In this case the right to reclaim was meaningless since Griffin sold the goods thus removing them from the corpus of the bankrupt's assets. The only logical solution would have been to grant the administrative expense under Sec. 546(c)(2)(A) or secure such claim by a lien under Sec. 546(c)(2)(B). The bankruptcy court denied the alternative administrative expense treatment because Oliver failed to immediately seek relief from the automatic stay provisions of the law or to take some other adversary action. The bankruptcy court did not address the alternative remedy of priority lien treatment. Had it done so, presumably its decision would not have been different since the basis for the decision was the delay on the part of Oliver in pursuing its reclamation rights.
 
 
 21
 The district court held that to require the reclaiming seller to file an adversary action would add an additional requirement or prerequisite to the right of reclamation which was not required by the term of the statute.
 
 
 22
 There is no question but what Oliver had a right to reclaim on May 10, 1984. No action on the part of the bankrupt should be held to defeat that right. Western Farmers Assoc. v. Ciba Geiga (In re Western Farmer's Assoc.), 6 B.R. 432 (Bankr.W.D.Wash.1980).
 
 
 23
 The granting of an administrative claim under Sec. 546(c)(2)(A) is not inconsistent with the right to reclaim, but supplements that right. It provides additional protection to a seller who has delivered goods to a bankrupt debtor on the eve of the bankruptcy. It provides flexibility to the bankrupt estate by permitting the use of the property, if needed for the successful completion of the plan of reorganization. In such case the seller is protected without placing the plan in jeopardy.
 
 
 24
 While one might be inclined to discuss the conduct of Griffin in the context of fraud, the bankruptcy court correctly found that fraud is irrelevant.[6]
 
 
 25
 In this case the disposal of the goods by Griffin prevented successful reclamation. To order reclamation where such is impossible to attain is to acknowledge a right without a remedy. Once Griffin received notice of Oliver's intent to reclaim it became obligated to hold the goods for re-delivery to the seller. If Griffin desired to utilize the goods for the purpose of effecting a reorganization then it had the burden of requesting such use from the court. Should the court agree that it was important to the success of the plan to utilize the goods so reclaimed then reclamation may be denied. The court would then address the two ways in which the reclaiming creditor could be protected. To require the reclaiming creditor to follow its demand with an adversarial proceeding would only foster a race to the courthouse. At any rate, one cannot say that 102 days from notice to the filing of an adversarial action is unreasonable.
 
 
 26
 This court need not address the interest of the secured creditor Citizen's State Bank of St. Louis Park. The conflicting interest of a secured creditor vis-a-vis the rights of the reclaiming creditor, and the question of whether a creditor holding a valid security interest in the debtor's inventory is a good faith purchaser or lien creditor under Minn.Stat. Sec. 336.2-702, must await the day when the conflict between such competing interests is ripe for determination. The court is not unmindful of the various decisions on the subject. See Action Industries, Inc. v. Dixie Enterprises, Inc., 22 B.R. 855 (Bankr.S.D.Ohio 1982); Lavonia Manufacturing Co. v. Emery Corp., 52 B.R. 944 (Bankr.W.D.Wash.1980). However, since this action is not one between the competing interests of the reclaiming creditor and the secured creditor, but rather involves the narrower issue of the appropriateness of granting the alternative remedies under 11 U.S.C. Sec. 546(c)(2)(A) or (B), such cases are not dispositive.
 
 
 27
 In this case the bankruptcy court did not deny reclamation. Since reclamation was made impossible by reason of the action of the bankrupt, the court, recognizing this impossibility, more appropriately should have made a judicial determination to deny reclamation and proceed to consider which statutory alternative should have been granted. The district court essentially recognized the futility of Oliver's right of reclamation which had the effect of denying reclamation as no longer possible. The record is silent as to whether or not the second alternative provided by 546(c)(2)(B) was considered.
 
 
 28
 III. SUMMARY.
 
 
 29
 Oliver, as reclaiming seller-creditor, met all predicate tests required to assert its right to reclamation under 11 U.S.C. Sec. 546(c). The bankruptcy court recognized such right. The goods were removed from the debtor's possession by sales within the ordinary course of business. As such the reclaiming creditor was entitled to the protection afforded by either 11 U.S.C. Sec. 546(c)(2)(A) (granting an administrative expense priority claim) or 11 U.S.C. Sec. 546(c)(2)(B) (securing the seller's claim with a lien). While a bankruptcy court has discretion to deny reclamation to a creditor entitled to such relief, if the court denies the relief it must proceed to apply one of two alternatives provided by statute. 4 Collier on Bankruptcy, 15th Ed.1986 Sec. 436.03.
 
 
 30
 Presumably, the bankruptcy court considered the alternatives available under Sec. 546(c)(2)(B) and rejected it in favor of Sec. 546(c)(2)(A). The district court was accordingly correct in granting an administrative expense claim.
 
 
 
 *
 The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, presiding
 
 
 [2]
 The Honorable Robert J. Kressel, Bankruptcy Judge for the Bankruptcy Court of the District of Minnesota
 
 
 [3]
 Minn.Stat. Sec. 336.2-702 (1984) is an adoption of U.C.C. Sec. 2-702 and provides a right of reclamation as follows:
 (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
 (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in the ordinary course or other good faith purchaser under this article (section 336.2-403). Successful reclamation of goods excludes all other remedies with respect to them.
 4 U.S.C. Sec. 362(a) provides in part:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of--
 * * *
 (3) Any act to obtain possession of property of this estate or of property from the estate.
 * * *
 5 U.S.C. Sec. 546 provides in part:
 Sec. 546. Limitations on avoiding powers
 * * *
 (c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but--
 (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
 (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court--
 (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
 (B) secures such claim by a lien.
 Although not material to the case now under consideration, it is noted that Sec. 546(c) was amended for cases filed after October 7, 1984. The amendment as it relates to Sec. 546(c) adds new subsections (d) relating to grain producers and fishermen (e) commodity brokers and (f) margin payments or settlement payments made by or to a repo participant in connection with a repurchase agreement.
 
 
 [6]
 In Matter of PFA Farmers Market Ass'n, 583 F.2d 992 (8th Cir.1978), the court at p. 994, note 2, stated:
 In an effort to simplify and make uniform the seller's right, the Code has dispensed with proof of fraud. Upon proof that the buyer was insolvent at the time goods were delivered, a seller may now reclaim if it makes demand within ten days of delivery. The Official Comment to Sec. 2-702(2) explains:
 Subsection (2) takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller.