**In re McLOUTH STEEL PRODUCTS CORPORATION, Debtor.**

**McLOUTH STEEL PRODUCTS CORPORATION, Appellant,**

**v.**

**QUAKER CHEMICAL COMPANY, A.J. Baxter & Company, Core Electric Company, Nalco Chemical Company, and Rockford Trading Company, Appellees.**

Civil No. 97–71693.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 21, 1997.

Larry P. Rochkind, Jaffe, Raitt, Heuer & Weiss, P.C., Detroit, MI, for Appellant.

Julie B. Teicher, Southfield, Kenneth M. Schneider, Detroit, Terrance A. Keith, Troy, Julia A. Perkins, Detroit, MI, for Appellees.

### MEMORANDUM OPINION AND ORDER

TAYLOR, Chief Judge.

This matter comes before the Court pursuant to 28 U.S.C. § 158(a), as an appeal from the bankruptcy court. Appellant McLouth Steel Products Corporation, debtor in bankruptcy, appeals from the April 17, 1997, order of the bankruptcy court which awarded administrative priority to certain reclamation claimants, who are here as Appellees. Appellant contends that Appellees did not present evidence sufficient to support their reclamation claims, pursuant to 11 U.S.C. § 546, and that the bankruptcy court thus improperly awarded Appellees administrative priority on their reclamation claims. Appellant further contends that Appellees' claims should not have been awarded administrative priority because Appellees did not diligently pursue their reclamation claims. Finally, Appellant claims that the bankruptcy court erred in awarding Appellees' reclamation claims administrative expense priority, as their claims were extinguished by a first priority secured interest.

For the reasons set forth below, this Court must AFFIRM IN PART and REVERSE IN PART, the decision of the bankruptcy court.

I.

Appellant, formerly an integrated hot-rolled and cold-rolled steel products manufacturer, filed for Chapter 11 bankruptcy on

September 29, 1995.[1] Prior and subsequent to the petition date, Congress Financial Corporation ("Congress") obtained its security interest in Appellant's personal property, pursuant to credit agreements executed in 1994 and 1995 between Appellant and Congress, and pursuant to an order entered by the bankruptcy court on October 19, 1995. The property in which Congress obtained its secured interest included inventory and after-acquired property ("the pre-petition collateral").

The bankruptcy court found, in its order of October 19, 1995, that Congress was an oversecured creditor, as the value of the pre-petition collateral exceeded the amount of pre-petition indebtedness to Congress at all times prior to the petition date. The facts of the case, which are undisputed, and this Court's conclusions of law, are outlined below.

Prior to the bankruptcy petition date, Appellees, suppliers of goods used in the manufacture of hot-rolled and cold-rolled steel products, each had made deliveries of goods to Appellant. Upon learning of Appellant's filing for bankruptcy, Appellees, pursuant to § 546(c) of the Bankruptcy Code and § 440.2702 of the Michigan Compiled Laws (equivalent to § 2–702 of the Uniform Commercial Code), separately and timely delivered written notices of demand for all goods delivered to Appellant within ten days prior to the bankruptcy petition date. Appellee Rockford Trading Company ("Rockford Trading") made its reclamation demand by letter dated September 29, 1995; Appellees Core Electric Company ("Core Electric"), A.J. Baxter & Company ("A.J.Baxter"), and Nalco Chemical Company ("Nalco") made their demands on October 2, 1995; and Appellee Quaker Chemical Company ("Quaker") made its demand on October 5, 1995.

In the demand letters, each Appellee identified the goods sought to be reclaimed by invoice number, description, and delivery date. Appellant objected by letter to each Appellee that the reclamation claims were invalid because they had been insufficiently stated, and, furthermore, that the claims were extinguished by the rights of Congress, a secured lender with a position superior to Appellees'.

On October 12, 1995, Appellees Core Electric and A.J. Baxter, upon receiving Appellant's letter stating that it would not honor their reclamation claims, wrote to Appellant to inquire as to what of their products remained on the premises at the time of the petition date. When they received no response to this inquiry, Core Electric and A.J. Baxter filed motions in bankruptcy court for reclamation or allowance of administrative expense. Those motions were subsequently withdrawn on December 15, 1995, pursuant to the entry of a Consent Order, wherein Appellant conceded that the subject goods were received as set forth in the reclamation notices, that reclamation was not practicable at that time, and that the information as set forth in the reclamation demand letters was deemed admitted. The Consent Order also stated that "Core Electric and A.J. Baxter reserve all rights, including the right to move for allowance and payment of administrative expense claims at any time. Core Electric and A.J. Baxter may also or in the alternative file administrative expense proofs of claim. All defenses to the effect that Core Electric and A.J. Baxter must proceed by way of adversary proceeding are waived."

In response to Appellant's general objection to its demand letter, Appellee Nalco informed Appellant that it intended to pursue its reclamation rights. Subsequently, Appellant, in a letter dated November 15, 1995, represented that it would stipulate to treating Nalco's reclamation claim as an administrative priority claim, in order to avoid having to potentially defend against a large number of adversary proceedings. Due to Appellant's representations, Nalco did not pursue its reclamation claim any further, until Appellant filed its motion in bankruptcy

---

1. The filing of a Chapter 11 petition for bankruptcy allows an insolvent entity to maintain its operations as it restructures its debt obligations. While in Chapter 11 bankruptcy, a firm's debt is restructured pursuant to a submitted plan of reorganization, wherein classes of creditors or equity-holders are prioritized so that each class may seek to have its claims fully recognized before classes subordinate to it receive anything. *See* 11 U.S.C. § 1101 *et seq.*

court to disallow all of the reclamation claims of Appellees.

Appellees Rockford Trading and Quaker filed a proofs of claim for the goods sought in their letters of demand, on November 13, 1995, and November 20, 1995, respectively. Rockford Trading and Quaker took no further action, beyond making written demands and filing proofs of claim, on their reclamation claims.

On July 11, 1996, the bankruptcy court entered a Sale Order authorizing Appellant's sale of substantially all of its assets to Hamlin Holdings, Inc., a third party creditor. The resulting sale proceeds, in the amount of $1,212,735.80, became part of the bankruptcy estate. The estate also received $1,250,000 from a "scrap escrow" account. Pursuant to the Sale Order, Congress' secured claims against the bankruptcy estate were disallowed in full.

On December 23, 1996, Appellant objected to Appellees' various claims by filing a motion for an order: (1) designating reclamation claims as unsecured claims; and (2) allowing or disallowing them as unsecured claims in amounts specified. In the motion, which listed objections to 32 reclamation claims, Appellant requested that all but two of the claims be disallowed as reclamation claims and allowed as general unsecured claims. Except for the claims of Appellees, all of the claims were disallowed for failure to respond.

The bankruptcy court heard oral argument on Appellant's motion regarding Appellees' remaining reclamation claims on March 13, 1997. On April 7, 1997, the bankruptcy court entered its order denying Appellant's motion, and, upon being advised that the goods shipped by Appellees no longer existed, allowing Appellees administrative priority claims in amounts equal to their respective reclamation claims. In granting administrative priority to Appellees' claims, the bankruptcy court noted that because the reclamation goods sought were no longer available, fairness dictated that Appellees were entitled to that position.

Appellant filed this appeal from the bankruptcy court's order of April 7, 1997, denying Appellant's motion and granting Appellees administrative expense priority on their reclamation claims.

II.

In bankruptcy, the district court may act as an appellate tribunal. 28 U.S.C. § 158(a). A bankruptcy court's findings of fact may not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *Laguna Assoc. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assoc. Ltd. Partnership)*, 30 F.3d 734 (6th Cir.1994). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made. *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1356 (6th Cir.1996). The bankruptcy court's conclusions of law are subject to *de novo* review. *Canadian Pacific Forest Products Ltd. v. J.D. Irving Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir.1995).

III.

Appellants claim that the bankruptcy court erred in granting administrative expense priority to Appellees because Appellees did not state adequate claims pursuant to § 546(c) of the Bankruptcy Code and M.C.L. § 440.2702; because Appellees did not diligently pursue their reclamation claims; and because Congress' rights as a secured creditor with an after-acquired security interest were superior to and, thus, extinguished the rights of Appellees, the reclamation claimants.

■ Reclamation, a rescissional remedy based upon the theory that the seller has been defrauded, is the right of the seller to recover possession of goods delivered to an insolvent buyer. Section 546(c) of the Bankruptcy Code and M.C.L. § 440.2702, which adopted and mirrors § 2–702 of the Uniform Commercial Code, govern reclamation by unpaid, unsecured creditors who sold goods to a company in bankruptcy, and allow a creditor to reclaim goods delivered to a debtor when certain conditions are met. Section 546(c) of the Bankruptcy Code states, in relevant part:

(c) Except as provided in subsection (d) of this section, the rights and powers of a

trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) Before 10 days after receipt of such goods by the debtor.

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 504(b) of this title; or

(B) secures such claim by a lien.

11 U.S.C. § 546(c).

M.C.L. § 440.2702 provides, in relevant part:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery the 10 day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article.... Successful reclamation of goods excludes all other remedies with respect to them.

M.C.L. § 440.2702 (1997).

In short, a seller is entitled to reclamation of goods delivered if: (1) the seller satisfied state statutory or common law reclamation requirements; (2) the buyer was insolvent when the goods were received; and (3) the seller made a demand on the buyer in writing within ten days of the buyer's receipt of the goods. *Oakland Gin Co., Inc. v. Marlow (In re Julien Co.)*, 44 F.3d 426, 431 (6th Cir.1995); *In re Marko Electronics, Inc.*, 145 B.R. 25, 27 (Bankr.N.D.Ohio 1992). If the seller fulfills these requirements, then a court should allow the seller the right to reclaim its goods.

### A. Were Appellees' reclamation claims sufficiently stated

Appellant claims that each of the Appellees, in asserting their reclamation rights by sending written notices of demand, failed to establish all the necessary elements of a reclamation claim, pursuant to § 546(c) of the Bankruptcy Code and M.C.L. § 440.2702. Specifically, Appellant alleges that each of the Appellees failed to: establish that the goods to be reclaimed were shipped in the ordinary course of business; establish lack of knowledge of Appellant's insolvency; demonstrate that the goods were in Appellant's physical possession and identifiable form at the time Appellees received the reclamation demand; and demonstrate that Appellees still had the goods in identifiable form when Appellant received the reclamation claim.

■ Although Appellant cited *In the Matter of Adventist Living Centers, Inc.*, 52 F.3d 159 (7th Cir.1995), to support the proposition that Appellees were required to establish each of the aforementioned elements to properly reclaim the goods sought, the *Adventist* Court did not require that claimants establish lack of knowledge of the debtor's insolvency, as claimed by Appellant, in order to make proper claims. This specific requirement is not only legally insupportable, it is also unreasonable in that it requires a seller to draw legal conclusions from information which may be circulating as rumor in the relevant market, regarding the debtor's possible financial status. Also, because insolvency is defined and determined in various ways by the Bankruptcy Code, such a requirement would force a seller to make legal determinations which are within the exclusive jurisdiction of the bankruptcy and federal courts.

In reviewing reclamation claims, the courts in the Sixth Circuit have relied on the relevant statutory authority, namely § 546(c) of

the Bankruptcy Code and M.C.L. § 440.2702 in Michigan, to make their determinations. However, the courts in this circuit have yet to explicitly articulate "common law reclamation requirements" necessary for establishing a valid reclamation claim, and, thus, a viable administrative priority claim based on a reclamation right. Thus, this Court adopts the eminently reasonable requirements of a valid reclamation claim, which incorporate the requirements of § 546(c) and UCC § 2–702, as set forth by the Seventh Circuit in *In the Matter of Adventist Living Centers, Inc., supra.*

In order to establish a valid reclamation claim, a claimant must establish that:

1. The seller sold goods on credit to the debtor in the ordinary course of business of both;

2. The seller delivered the goods to the debtor at a time when the debtor was insolvent as defined by the Bankruptcy Code;

3. Within ten days after the goods were delivered to the debtor, the seller made a written demand for the return of the goods; and

4. The debtor had possession of the goods at the time of the reclamation demand or the goods were not in the hands of a buyer in the ordinary course of a good faith purchase at the time of the demand.

As for the last requirement, the Courts of Appeal for the Seventh, Eighth, and Eleventh Circuits have held that the seller may only reclaim goods in the buyer's possession. *See, e.g., In the Matter of Adventist Living Centers, Inc., supra,* at 162; *Pester Refining Co. v. Ethyl Corp., (In re Pester Refining Co.),* 964 F.2d 842, 845 (8th Cir.1992); *Flav–O–Rich, Inc. v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d

1343, 1347 (11th Cir.1988) (holding that an implicit requirement of a § 546(c) claim is that a debtor must possess the goods when a reclamation demand is made, and, therefore, that the seller must prove possession as part of its prima facie case).[2]

In the instant appeal, all of the Appellees, in accord with § 546(c) and M.C.L. § 440.2702, made timely written reclamation demands when they learned of Appellant's insolvency, and within ten days of receipt of the goods by Appellant. Each of the Appellees, in their letters of demand to Appellant, sufficiently identified the goods sought by invoice number, description, and delivery date. It is clear from the record to this Court, as it must have been to the reviewing bankruptcy court, that all of the goods sought were shipped on credit by Appellees to Appellant in the ordinary course of business, as all of those goods were chemicals and other products used in the manufacture of hot-rolled and cold-rolled steel products, and as Appellees were all regular suppliers to Appellant of such products.

The only remaining issue with regard to the sufficiency of the reclamation claims concerns whether Appellant had possession of the goods at the time the reclamation demands were made.[3]

In this case, contrary to the assertions of Appellant, Appellant's possession of the goods sought at the time of demand, has been conceded by way of circumstance and argument. Appellant has argued, in another section of its brief on appeal, that Appellees' reclamation rights were extinguished due to Appellant's selling of those very goods to Hamlin Holdings, a third party creditor, in order to satisfy the interest of Congress, a first priority secured creditor. The sale of Appellant's assets to Hamlin was authorized by the bankruptcy court on July 11, 1996,

---

**2.** Some courts have even held that, where a debtor is in possession of goods sought to be reclaimed and is in receipt of notice of intent to reclaim, the debtor is obligated to hold the goods and not unilaterally sell them in order to avoid the claims. *See, e.g., Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.),* 795 F.2d 676, 679 (8th Cir.1986) (holding that once debtor received notice of creditor's notice of intent to reclaim, debtor became obligated to hold the goods still on hand for re-delivery to the

creditor). This Court declines to rule on this issue, as it is not directly before the court. Moreover, in this case, the sale of Appellant's assets to a third party creditor was approved by the bankruptcy court.

**3.** The parties to this appeal have not made an issue of whether the goods were in the hands of buyers in the ordinary course of business at the time of demand.

well after the reclamation demands had been made by Appellees. Appellant cannot now claim that Appellees' claims must be disallowed due to their failure to prove that their goods were on hand at the time of demand, when Appellant itself has conceded that those very goods were sold to Hamlin, approximately eight months after Appellees made their reclamation demands.

Moreover, Appellant is estopped from arguing that Core Electric and A.J. Baxter must prove what of their goods were in Appellant's possession at the time of demand. The elements of equitable estoppel are: (1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies on the facts; and (3) the other party is harmed by the reliance. *Stenke v. Quanex Corp.*, 759 F.Supp. 1244, 1246 (E.D.Mich.1991); *3 P.M., Inc. v. Basic Four Corp.*, 591 F.Supp. 1350, 1365 (E.D.Mich.1984).

As evidenced by its dealings with Appellees Core Electric and A.J. Baxter, Appellant by its own actions throughout the course of these bankruptcy and reclamation proceedings, thwarted Appellees' attempts to discover what of the goods sought remained in Appellant's possession at the time of demand. In particular, when Core Electric and A.J. Baxter requested disclosure of records, all within the exclusive domain of Appellant, which would indicate what of their products remained on the premises as of the petition date, Appellant failed to respond. Appellant's failure to disclose information essential and necessary to Core Electric and A.J. Baxter's determination of what remained on hand subsequently frustrated their ability to carry the burden on this issue. It was only after Core Electric and A.J. Baxter filed motions regarding their claims, that Appellant then stipulated that the goods had been received, but "consumed." A claimant cannot be required to diligently request information about its goods no longer in its possession but in the possession of the debtor, be thwarted by the debtor, and then be defeated by that debtor after doing so for failing to carry its burden of proof as to what of its goods remained in the debtor's possession.

Moreover, as conceded by Appellant at the hearing before the bankruptcy court on its motion, it is now impracticable to make the determination of what goods remained on hand at the time of demand. The following colloquy between Bankruptcy Judge Ray Reynolds Graves and Ms. Jane Quasarano, the attorney representing Appellant, occurred at the hearing:

MS. QUASARANO:.... So any goods that were initially, that may have been there when the initial reclamation demand is made and when the insolvency petition was filed were likely used during that period of operations. And when the—

THE COURT: That is likely, but we don't know that.

MS. QUASARANO: No, we don't know that for a fact, but we—and we could wait and have the reclamation claimants demonstrate their goods were still there.

THE COURT: That could be the critical question.

MS. QUASARANO: Well, it could be the critical question, but we could answer without that because after we went through that period of operations, we terminated facilities ... and then there was another long period and then the sale occurred, and all of the assets of McLouth were sold to Hamlin Holdings, Inc., a third-party creditor.

And at the time that we ceased operations and at the time of the sale, Congress still had a significant outstanding balance. It ... was still owed and they were paid from the proceeds of the sale and all of the goods were transferred, including any purported reclamation claims that might still have existed at that date to Hamlin and Hamlin paid Congress off and Congress went away.

So the goods themselves satisfied the secured creditor's lien....

Regarding what information about the goods sought had been available at the time of demand and subsequent to demand, Judge Graves asked Ms. Quasarano at the same hearing:

THE COURT: Would the information then be available if they had pursued?

MS. QUASARANO: I think in the period where the Debtor was operating ... the opportunity would have been available.

But what has happened since then ... the Debtor operated for a long period, the Debtor ceased operations, the Debtor now—the Debtor sold all of its assets to a third party, and I didn't say that the goods were gone, I know they are gone now because McLouth has no goods at all.

Counsel for Appellant further stated that determination of what goods were in its possession at the time of demand would be extremely costly and involved, as all of Appellant's records had been transferred to Hamlin Holdings pursuant to the sale of Appellant's assets to Hamlin, as the computer system used by Appellant to keep its records prior to the petition date had been "shut down," and as a special consultant had been retained to review and analyze any remaining records in Hamlin's possession.

Appellant should not be allowed to both have its proverbial cake and eat it, too, by claiming on the one hand that Appellees made improper claims because they did not establish that the goods were on hand, and, on the other, by claiming that Appellees' claims were extinguished because the goods, which were on hand after all, were sold to a third-party creditor. Appellant's arguments are particularly unpersuasive where it has been conceded by all of the parties to this appeal, that none of them are now in a position to make such a determination without incurring great expense. It is Appellant's conduct which prevented timely discovery of the facts which it now claims are crucial, and which are now likely beyond ascertaining.

Additionally, after Appellee Nalco stated in its response to Appellant's letter of refusal to honor its reclamation claim, that it would seek leave to pursue its claim, Appellant represented to Nalco that it would settle Nalco's reclamation claim by allowing it as an administrative priority, in order to avoid having to defend against a great number of possible claims and adversary proceedings. Based on Appellant's representation, Nalco did not pursue its claims any further. Appellant is, again, estopped from coming before

this Court to argue, as it did before the bankruptcy court, that Nalco failed to establish Appellant's possession of the goods sought at the time of demand, when Appellant by its own actions thwarted Nalco's pursuit and investigation of its claims.

Because subsequent events have now rendered altogether impracticable the determination of whether Appellant possessed the goods sought at the time of demand, because of Appellant's actions in response to the efforts of the above three Appellees to assert their reclamation rights, and because of the conceded presence at the time of demand of at least some of the goods on Appellant's premises, this Court finds that those reclamation claims were sufficiently presented.

### B. Did Appellees diligently pursue their reclamation claims

The Sixth Circuit has not directly addressed the issue of whether reclamation claimants are required to file an adversary proceeding or some other, such as a motion or complaint, in bankruptcy court, in order to enforce their rights to reclaim goods as provided by the Bankruptcy Code. As discussed in specific detail above, § 546(c) of the Bankruptcy Code and M.C.L. § 440.2702 simply require that, in order for a seller to reclaim goods sold to an insolvent buyer, the seller must make a written demand to the buyer within ten days of the buyer's filing for bankruptcy. However, § 546(c) and M.C.L. § 440.2702 also require that the claimant must fulfill existing common law or statutory requirements in order to perfect their reclamation claims. Accordingly, in making a determination as to whether Appellees diligently pursued their claims, this Court must specifically address whether a reclamation claimant must file an adversary proceeding or other proceeding in bankruptcy court in order to perfect its reclamation claim.

■ This Court finds that, where a written notice of reclamation has been properly made on an insolvent buyer and where the buyer objects to the claim, the reclamation claimant must seek judicial intervention in order to

further perfect and preserve its reclamation claim.

■ Reclamation is not a self-executing remedy. *Tate Cheese Co. v. Crofton & Sons, Inc., (In the Matter of Crofton & Sons, Inc.)*, 139 B.R. 567, 569 (Bankr.M.D.Fla.1992). In fact, the bankruptcy courts exist, in part, precisely for the purpose of resolving conflicts between an insolvent debtor and its various creditors, when such conflicts arise over what the insolvent debtor owes, and to whom. If a creditor demands that it is entitled to some amount of the insolvent debtor's remaining assets or interest pursuant to the Bankruptcy Code, and the debtor fails to return or pay for those goods, in addition to objecting to the creditor's claim, it makes little sense that the creditor should be allowed to simply sit on the demand in expectation of its fulfillment, rather than seeking remedy through the appropriate judicial channels to enforce its alleged, but opposed, rights under the Bankruptcy Code.

In fact, all of the cases cited by both Appellant and Appellees regarding reclamation claims arose out of the *creditors'* filing of a motion, complaint, or adversary proceeding to reclaim goods or to seek, in the alternative, administrative priority on those claims. *See Oakland Gin Co., Inc. v. Marlow (In re Julien Co.)*, 44 F.3d 426 (6th Cir.1995) (adversary proceeding on reclamation claim was commenced after demand for reclamation was made); *In re Marko Electronics, Inc.*, 145 B.R. 25 (Bankr.N.D.Ohio 1992) (claimant filed motion to allow reclamation or administrative claim, two months after demand was made); *Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842 (8th Cir.1992) (complaint for reclamation was filed after demand was made); *Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.)*, 795 F.2d 676, 679 (8th Cir.1986) (motion/complaint for reclamation filed after demand was made); *In the Matter of Adventist Living Centers, Inc.*, 52 F.3d 159 (7th Cir.1995) (creditor filed claim for reclamation after demand was made). *See also, Tate Cheese Co, Inc. v. Crofton & Sons, (In the Matter of Crofton & Sons)*, 139 B.R. 567 (Bankr.M.D.Fla.1992) (speaking directly to the issue of diligent pursuit, court held that where debtor failed to pay or return subject cheese to creditor upon timely reclamation demand, creditor's failure to diligently pursue reclamation demand through appropriate judicial channels defeated creditor's right to reclaim cheese).

■ Thus, this Court holds that in order for a reclamation claimant to further perfect its reclamation rights, pursuant to its proper delivery of a letter of demand and in the face of objections made or filed by the insolvent debtor, the burden is on the reclamation claimant to further diligently pursue its claim by, for example, filing a motion or complaint for reclamation in bankruptcy court for the goods, or commencing an adversary proceeding.[4]

In this case, the several Appellees are each somewhat differently situated, and the Court must evaluate their claims separately.

### 1. Core Electric Company and A.J. Baxter & Company

■ With respect to the awarding of administrative priority to Core Electric and A.J. Baxter's reclamation claims, this Court must affirm the ruling of the bankruptcy court. Appellees Core Electric and A.J. Baxter, upon being notified of Appellant's objections to their letters of demand, did file motions to reclaim, or in the alternative, for administrative expense priority on those claims. Core Electric and A.J. Baxter withdrew those motions pursuant to the entry of a Consent Order, which, significantly, ordered that Core Electric and A.J. Baxter were free to move for administrative priority on their claims, and that Appellant waived the defense that Core Electric and A.J. Baxter must proceed by way of adversary proceeding. (Consent Order at ¶ 2.)

First, Appellant is estopped from asserting that Core Electric and A.J. Baxter did not diligently pursue their reclamation claims.

---

4. Bankruptcy Rule 7001 states that a creditor must file an adversary proceeding if it seeks to "determine the validity, priority, or extent of a lien or *other interest in property.* ..." (emphasis added). However, several courts have ruled on motions and complaints, as well as on adversary proceedings, filed by claimants seeking reclamation of goods. *See, supra.*

Although Core Electric and A.J. Baxter did withdraw their motions regarding their reclamation claims, such withdrawal was premised on Appellant's representations, as stated in the Consent Order, that Core Electric and A.J. Baxter would be free to move for administrative priority on their claims and that Appellant would not later argue that their claims were barred due to their failure to file an adversary proceeding.

Second, even if Appellant were not equitably estopped from asserting Appellees' failure to diligently pursue their claims, this Court finds that Appellees Core Electric and A.J. Baxter did diligently pursue their reclamation claims, as Core Electric and A.J. Baxter both filed motions to reclaim, or in the alternative, for administrative expense priority on those claims. The subsequent withdrawal of those motions has no bearing on Core Electric and A.J. Baxter's diligent pursuit of their claims, as the Consent Order compelling such withdrawal ordered that Core Electric and A.J. Baxter could move for administrative priority on their claims, and that Appellant waived any defense requiring Core Electric and A.J. Baxter to file adversary proceedings on their claims.

## 2. Nalco Chemical Company

■ Although Appellee Nalco did not file a motion or adversary proceeding on its reclamation claim, it failed to do so only because Appellant had represented to Nalco, pursuant to Nalco's notifying Appellant that it did plan on taking some action to enforce its rights under the Bankruptcy Code, that Appellant would negotiate a settlement with Nalco, in which Nalco's reclamation claims would receive administrative priority.

Appellant is, once again, estopped from defeating Nalco's claim be asserting that Nalco lost its reclamation rights because it failed to diligently pursue its reclamation claim. Here, Appellant, in its attempt to avoid having to defend a potentially large number of adversary proceedings, represented that it would stipulate to treating Nalco's claim as an administrative claims. Nalco reasonably relied, to its detriment, on Appellant's representations of its intent to settle the claim, as Nalco subsequently did not, as

it had initially planned, seek to enforce its reclamation rights. Appellant thus lulled Nalco into a false sense of security by promises of settlement, thereby thwarting Nalco's attempts to seek judicial intervention on its claim when Appellant placed Nalco's claim in dispute. Thus, this Court finds that, given the circumstances and Appellant's apparent bad faith in frustrating Nalco's attempts to enforce its reclamation rights, Appellant is estopped from asserting that Appellee Nalco is not entitled to its right to reclaim, and thus to its administrative claim, because Nalco failed to diligently pursue its reclamation claim.

## 3. Quaker Chemical and Rockford Trading Companies

■ The circumstances surrounding Appellees Quaker and Rockford Trading's claims differ significantly from those surrounding the claims of Core Electric, A.J. Baxter, and Nalco.

Appellees Quaker and Rockford Trading properly made their reclamation demands, to which Appellant objected. Although Quaker and Rockford Trading filed proofs of claim on the goods sought in their reclamation claims, neither Appellee took any further action in response to Appellant's written objection, which stated that the claims were generally insufficient or inadequate. Their claims, from the record, could well have been considered as having been abandoned after rejection.

First, Quaker and Rockford Trading argue that Appellant's general objection did not trigger any duty on their part to proceed any further on their claim, and that, secondly, a reclamation claimant is not required to file an adversary proceeding in seeking to reclaim goods sold to an insolvent buyer. These arguments are not persuasive.

Although Appellant's letter was rather general and apparently formulaic, it stated a clear objection to Quaker and Rockford Trading's reclamation claims. The letter should have put Quaker and Rockford Trading on notice, and it effectively invited them to clarify or further assert their claims by filing a motion, complaint, or adversary pro-

ceeding in bankruptcy court. As stated above, particularly where there is a written objection to a claim, a claimant may not be allowed to merely sit on its potential claims awaiting fulfillment, when the debtor has clearly rejected the claim. Again, the Bankruptcy Code is not self-executing, and the bankruptcy courts exist, in part, for the purpose of resolving disputes over entitlement to insolvent debtors' assets, between the insolvent debtors and their various creditors.

In this case, for over one year post-petition, Quaker and Rockford Trading did nothing beyond making a written demand and filing proof of claim. Not until Appellant filed the motion giving rise to this appeal, in December of 1996, over one year after making their reclamation demands, did Quaker and Rockford Trading pursue their rights in response to that motion. Since Appellant failed to pay for or return the goods sought and objected to the claims in writing, it was incumbent on Quaker and Rockford Trading to timely pursue the reclamation demands through appropriate judicial channels. In asking the Court to find that they diligently pursued their reclamation claims, Quaker and Rockford Trading are asking this Court to establish a rule that a reclaiming seller may make a written reclamation demand and then wait for an unlimited period of time before mentioning the need for judicial assistance in regaining possession of reclamation goods. See Tate Cheese Co., Inc. v. Crofton & Sons, Inc., (In the Matter of Crofton & Sons, Inc.), 139 B.R. 567 (Bankr.M.D.Fla. 1992). This Court declines to do so in this appeal. Although Quaker and Rockford Trading fulfilled the technical requirements of § 546(c) of the Bankruptcy Code and M.C.L. § 440.2702, Quaker and Rockford Trading failed to pursue diligently their right of reclamation, and, consequently, have lost that right.

C. *Were Appellees' reclamation rights extinguished*

Bankruptcy courts in the Sixth Circuit have held that where a court for some reason chooses to deny the right of reclamation of properly reclaimed goods, then the court must either grant the seller a priority claim, or a lien. See, e.g., In re Marko Electronics, Inc., 145 B.R. 25, 27 (Bankr. N.D.Ohio 1992); 11 U.S.C. §§ 546(c)(2)(A) and 546(c)(2)(B). The United States Court of Appeals for the Eighth Circuit, having addressed the issue of a seller's right to reclaim in several appeals from the bankruptcy court, also has held that, where a court for some reason chooses to deny a seller the right of reclamation of properly reclaimed goods, then the court must either grant the seller a priority claim such as an administrative claim, or a lien. See, e.g., Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.), 964 F.2d 842 (8th Cir. 1992); Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.), 795 F.2d 676, 679 (8th Cir.1986).

Here, all of the Appellees have conceded that Congress had a prior secured interest superior to theirs, but maintain that their claims were subordinate to, and not extinguished by, Congress' interest.

Appellant persists in its contention, however, that Appellees' claims were extinguished by Congress, despite case law stating otherwise. Appellant argues specifically that while the Eighth Circuit Court of Appeals, in In re Pester, supra, granted the claimant administrative priority on its reclamation claim, it also noted in dicta that a claimant's reclamation rights would be extinguished if a secured creditor's interest were satisfied out of the goods the seller sought to reclaim. Appellant contends that such is the case in the instant appeal.

However, in the instant appeal, as discussed supra, it is now impossible to find out which or how many of the Appellees' goods were sold to Hamlin Holdings to satisfy in full Congress' secured interest. Claimants, as this point, are not obligated to trace the proceeds of Appellant's sale of its assets to Hamlin, particularly where the interest of Congress, an over-secured creditor, has since been satisfied in full, and where funds in the amount of approximately 1.3 million dollars flowed into the bankruptcy estate as a result of the sale.

Moreover, as discussed in detail above, in the course of these proceedings, Appellant thwarted the efforts of Appellees Core Elec-

tric, A.J. Baxter, and Nalco to seek judicial intervention to reclaim their goods, proceeded to dispose of its assets in order to satisfy its debt to Congress, an *over-secured* first priority creditor, and then refused to allow Appellees' reclamation claims as administrative claims.

The circumstances of this case militate against disallowance of the administrative priority granted Appellees Core Electric, A.J. Baxter, and Nalco's reclamation claims. This Court, therefore, affirms the bankruptcy court's decision to award administrative priority to the reclamation claims of Appellees Core Electric, A.J. Baxter, and Nalco.

### IV.

IT IS HEREBY ORDERED that, for all the reasons set forth above, this Court AFFIRMS the bankruptcy court's awarding of administrative priority on the reclamation claims of Appellees Core Electric, A.J. Baxter, and Nalco; and REVERSES the bankruptcy court's awarding of administrative priority on the reclamation claims of Appellees Quaker and Rockford Trading.

IT IS FURTHER ORDERED that the bankruptcy court enter an order disallowing administrative priority on Quaker and Rockford Trading's reclamation claims, consistent with this Court's ruling.

IT IS SO ORDERED.