**In re QUALITY STORES, INC., et al., Debtors.**

**No. GG 01–10662.**

United States Bankruptcy Court, W.D. Michigan.

Jan. 31, 2003.

Stephanie Simon, Esq., Kirkland & Ellis, Chicago, Illinois, and Timothy J. Cur-

tin, Esq., Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Michigan, attorneys for Debtors.

Benjamin D. Feder, Esq., Shearman & Sterling, New York City, and Scott W. Dales, Esq., Dykema Gossett, Grand Rapids, Michigan, attorneys for Prepetition Lenders.

Norman E. Beal, Esq., Stinson, Morrison, Hecker, LLP, Kansas City, Missouri, attorney for Farm Innovators, Inc., Ruckers Wholesale & Service Company, Inc., Swisher Mower & Machinery Company, Midwest Quality Gloves, Inc., and Ertl Racing Champions.

James M. McArdle, Esq., Ungaretti & Harris, Chicago, Illinois, attorney for Morton Salt and Morton International, Inc.

Robert F. Wardrop, II, Esq., Wardrop & Wardrop, Grand Rapids, Michigan, and Jeffrey T. Wegner, Esq., Kutak Rock, LLP, Omaha, Nebraska, attorneys for Warren Distribution.

Robert S. Hertzberg, Esq., Pepper Hamilton, LLP, Detroit, Michigan, and John Cunningham, Esq., White & Case, Miami, Florida, attorneys for Official Committee of Unsecured Creditors, "Creditors' Committee." *

Steven M. Wallace, Esq., Greenselder, Henker & Gale, Swansea, Illinois, attorney for Worksaver, Inc.*

Roger G. Jones, Esq., Boult, Cummings, Conners & Berry, PLC, Nashville, Tennessee, attorney for Doane Pet Care Company.*

Steven O. Gasser, Esq., Shartsis, Friese & Ginsburg, LLP, San Francisco, California, attorney for Simpson Dura–Vent, Inc.*

Geoffrey A. Fields, Esq., Dickinson Wright, PLLC, Grand Rapids, Michigan, attorney for Standard Federal Bank, N.A.*

Thomas P. Sarb, Esq., Miller, Johnson, Snell & Cummiskey, PLC, Grand Rapids, Michigan, attorney for Yenkin–Majestic Paint Corporation.* 1

## OPINION REGARDING TREATMENT OF DISPUTED RECLAMATION CLAIMS

JAMES D. GREGG, Chief Judge.

### I. ISSUES

Under the facts of this contested matter, do certain reclamation claimants hold valid liens or administrative claims to be paid under the terms of a confirmed chapter 11 plan? Is the Debtor estopped from challenging the treatment of those reclamation claims?

### II. FACTS AND PROCEDURAL BACKGROUND

The court has jurisdiction over the case and this contested matter. 28 U.S.C. § 1334. This case and all related matters have been referred to this court by the United States District Court for the Western District of Michigan. 28 U.S.C. § 157(a) and L.R. 83.2 (W.D.Mich.). This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O). This opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANK. P. 7052.

On October 20, 2001, certain noteholders, as petitioning creditors, filed an involuntary petition against Quality Stores, Inc., the "Debtor." On November 1, 2001,

1. *These attorneys filed pleadings for their respective clients but did not participate in presenting evidence or making oral argument. Some attorneys appeared at the scheduling conference regarding this contested matter. Because they failed to file any further pleadings or appear at the hearing, they are not listed above.

the Debtor consented to an order for relief under chapter 11 of the Bankruptcy Code.[2] Also, on November 1, 2001, entities affiliated with the Debtor filed voluntary petitions for relief under the Bankruptcy Code.[3]

Prior to filing, the Debtor entered into a credit agreement to finance its business operations. The other parties to the agreement were Fleet National Bank (Administrative Agent), Nationsbank, N.A. (Syndication Agent), DLJ Capital Funding, Inc. (Documentation Agent), U.S. Bank National Association (Co–Agent), First Union National Bank (Co–Agent), and The Huntington National Bank (Co–Agent), collectively referred to as the "Prepetition Lenders." As of November 1, 2001, when the orders for relief were entered, the "relief date," the Debtor owed the Prepetition Lenders approximately $337,000,000. *See* Stipulation of Settlement and Agreed Order between the Debtor, the Creditors' Committee, and the Pre-

petition Lenders, the "Global Settlement," Docket ("Dkt.") Nos. 964 & 965; Transcript of testimony by Thomas J. Reinebach at hearing on September 9, 2002, p. 22 and 27, hereinafter "Trans. at ___." The Prepetition Lenders held valid, enforceable, and nonavoidable liens secured by nearly all of the Debtor's assets.[4]

As of the relief date, the value of all of the estate's collateral, nearly all of which secured the Prepetition Lenders' indebtedness, was approximately $199,000,000.[5] Trans. at 23. Therefore, the Prepetition Lenders held an undersecured claim against the Debtor's estate.

On November 1, 2001, the Debtor filed a motion to establish procedures to determine reclamation claims, the "Reclamation Procedures Motion."[6] After notice to parties in interest, the court eventually, on December 18, 2001, granted the Reclamation Procedures Motion and signed the "Reclamation Procedures Order."[7]

2. The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1330. All future references to the Bankruptcy Code shall be " § ___."

3. These entities are: QSI Holdings, Inc., Country General, Inc., Quality Farm & Fleet, Inc., Quality Investments, Inc., QSI Transportation, Inc., Vision Transportation, Inc., Quality Stores Services, Inc., F and C Holding, Inc., FarmandCountry.com., LLC, and QSI Newco, Inc. The court issued an order for joint administration of the cases. All of these entities in the chapter 11 proceedings are collectively referred to as the "Debtor."

4. The Prepetition Lenders held what is commonly referred to as a "blanket lien" which covered all assets, including inventory (some of which is subject to the claims of the Reclamation Creditors) and accounts receivable. The Prepetition Lenders' lien covered the Debtor's after-acquired property, including inventory. Final Order Authorizing Temporary Use of Cash Collateral and Granting Adequate Protection Pursuant to Bankruptcy Code Sections 361, 362(d) and 363, ¶ F; Dkt. No. 962. This "Cash Collateral Order" was

admitted into evidence at the hearing. Trans. at 30–31. However, the Prepetition Lenders apparently did not obtain or perfect an interest in the Debtor's various leasehold rights to secure the indebtedness.

5. The collateral value may be increased by approximately $5,000,000 if the Debtor is successful in receiving another tax refund.

6. The motion was entitled, "Motion For Order Under 11 U.S.C. §§ 105(a), 503(b), 546(c)(2) And 546(g), (A) Establishing Procedure For Treatment Of Valid Reclamation Claims And (B) Prohibiting Third Parties From Interfering With Delivery Of Debtors' Goods." Dkt. No. 99.

7. That order is entitled, "Order Under 11 U.S.C. §§ 105(a), 503(b), 546(c)(2) and 546(g), (A) Establishing Procedure For Treatment Of Valid Reclamation Claims And (B) Prohibiting Third Parties From Interfering With Delivery Of Debtors' Goods." Dkt. 446. Subsequently, in the Debtor's Plan, this order is referred to as the "Reclamation Order." Dkt. No. 1005.

The Reclamation Procedures Motion requested this court to establish procedures to determine the validity and treatment of asserted claims as follows:

(a) any vendor asserting a claim for reclamation must satisfy all requests entitling it to a right of reclamation under applicable state law and section 546(c)(1) of the Bankruptcy Code, as described more fully above. *See id.; Mayer Pollock Steel Corp. v. London Salvage & Trading Co. (In re Mayer Pollock Steel Corp.)*, 157 B.R. 952 (Bankr.E.D.Pa.1993);

(b) any vendor asserting a claim for reclamation should send the reclamation claim to Quality Stores, Inc., 445 E. Ellis Road, Muskegon, Michigan 49441, Attn: Thomas J. Reinebach;

(c) the Debtors will file a motion, on notice to parties in interest, listing those reclamation claims, if any, which they deem to be valid pursuant to the Order requested herein;

(d) absent further order of the Court, such motion shall be brought by the Debtors within 90 days of the Court's ruling upon this Motion;

(e) if the Debtors fail to bring such a motion within the required period of time, any holder of a reclamation claim may bring such a motion on its own behalf, but may not bring such a motion earlier than 90 days after the Court's ruling on this Motion;

(f) *all parties in interest shall have the right and opportunity to object to the inclusion or omission of any asserted reclamation claim in connection with such motion;* and

(g) *all reclamation claims allowed by the Court* pursuant to the above-described motion described in (d) above *will be paid by the Debtors in accordance with the terms of the order allowing such claims.*

Reclamation Procedures Motion, ¶ 26, at 9 (emphasis supplied).

A natural reading of the Reclamation Procedures Motion mandates one conclusion: Determination of reclamation claims will occur later in the case with uniform procedures utilized for all such claims. *See also* Reclamation Procedures Motion, ¶ 22, at 7 ("Specifically, the Debtors seek an order from the Court establishing a procedure for the treatment of valid reclamation claims . . . .").[8]

The Reclamation Procedures Order adopted the Debtor's proposed procedures and left it unquestioned that reclamation claimants would have an unqualified right to assert all substantive rights at a later time; other interested parties' rights, including the Debtor's, were also preserved without any restriction. *See* Reclamation Procedures Order at 3 ("[T]his Order is *without prejudice to the substantive rights of the Debtors and any interested party*

**8.** The undersigned judge believes that the Debtor's requested procedures established a valuable case management structure to determine the validity of reclamation claims. Absent such procedures, a "free for all" might result. Reclaiming sellers might file individual motions to reclaim their goods and to seek to obtain preliminary injunctions which might restrain the Debtor from selling such goods or utilizing the proceeds of the sale. Indeed, such a nonstructured process appears to have occurred in other cases. *See, e.g., Matter of Sunstate Dairy & Food Prods. Co.*, 145 B.R. 341, 343 (Bankr.M.D.Fla.1992). Having no reclamation procedure is disadvantageous to a chapter 11 debtor, its creditors, and the court. Early in the case, the focus of the parties should be upon the content and propriety of first-day orders, approval of cash collateral agreements or postpetition financing, appointment of necessary insolvency professionals, and other matters of time-sensitive importance. The determination of the validity and priority of reclamation claims are issues that can normally be deferred until a later time during a chapter 11 case.

*with respect to reclamation* [except as to procedures and any attempt to interfere with postpetition shipment or delivery of goods] *including the right to object to any reclamation claim on any grounds* available under applicable law . . . .") (emphasis supplied).

When signing the Reclamation Procedures Order, the undersigned judge did not intend to make *any* ruling regarding the parties' substantive rights or possible remedies. This is evident by the language in the order: "*All reclamation claims allowed by this Court* subsequent to the filing of the [Reclamation Procedures Motion] will be entitled to priority as administrative expenses or secured by a lien, *as determined by subsequent court order* in accordance with Section 546(c)(2) of the Bankruptcy Code . . . ." Reclamation Procedures Order at 2 (emphasis added). Thus, in the event of a dispute regarding a reclamation creditor's asserted claim or treatment, the court would decide the dispute. If a reclamation creditor held valid and enforceable reclamation rights, it was contemplated that the court would award a lien or administrative expense claim in accordance with Section 546(c) of the Bankruptcy Code.[9]

On March 12, 2002, the Debtor filed its First Amended Joint Plan Of Reorganization Pursuant To Chapter 11 Of The United States Bankruptcy Code, the "Plan." Dkt. No. 1005. The Plan was subsequently confirmed by order of this court dated May 3, 2002. Dkt. No. 1283. The language in the confirmed Plan is consistent and does not contradict the terms of the Reclamation Procedures Order. The Debtor reserved rights to review and file objections to disallow claims, including asserted administrative and secured claims. Plan, Article XI, § A, ¶ 1, and § D.2; Dkt. No. 1005.

On March 19, 2002, after filing of the Plan but before it was confirmed, the Debtor filed what this court characterizes as a "Substantive Reclamation Motion" which requested a determination of many asserted reclamation claims.[10] That motion sought, *inter alia*, a ruling that "as a matter of law, reclamation claims deemed valid are subject to and junior in priority to all liens of certain secured lenders on the Debtors' assets [i.e., the Prepetition Lenders] and are not entitled to administrative expense priority." Substantive Reclamation Motion at 1; Dkt. No. 1043. Also, the Debtor requested this court "enter an order holding that the Preliminary Valid Reclamation Claims are subject to and junior in priority to the Liens of the Pre–Petition Lenders."[11] Substantive Reclamation Motion at 10; Dkt. No. 1043.

---

9. The court recognizes that there is some language in the Reclamation Procedures Order that should have been excised or changed prior to entry. Specifically, it is stated "any right of reclamation for all such claims is hereby denied under the terms set forth in the [Reclamation Procedures] motion." The word "denied" creates some ambiguity. "Delayed" or "deferred" would have been a better choice of words. Notwithstanding the "denied" language, a reading of the order, and the underlying motion, puts all entities on notice that substantive reclamation issues would be brought to the court for decision later in the chapter 11 case.

10. The title of the Substantive Reclamation Motion is "Motion Of The Debtors For Entry Of An Order Pursuant To Sections 503(b) and 546(c)(2) Of The Bankruptcy Code For The Entry Of An Order (1) Fixing The Dollar Amount Of Valid Reclamation Claims, (2) Finding That Any Such Claims Are Subject To And Junior In Priority To Pre–Existing Liens On The Debtors' Assets And (3) If Allowed, Determining That Any Such Claims Are Not Entitled To Administrative Expense Priority Status." Dkt. No. 1043.

11. A summary report of the reclamation claims that the Debtor deemed valid was attached to the Substantive Reclamation Motion as Exhibit B. That report contained a "Pre-

Nine objections, some filed by multiple creditors, were filed to the Substantive Reclamation Motion. Objections were made by the following creditors: Farm Innovators, Inc., Ruckers Wholesale & Service Company, Inc., Swisher Mower & Machinery Company, Midwest Quality Gloves, Inc., Ertl Racing Champions, Morton Salt, Morton International, Inc., Warren Distribution, Worksaver, Inc., Doane Pet Care Company, Simpson Dura–Vent, Inc., Standard Federal Bank, N.A. (as assignee of Endless Designs), and Yenkin–Majestic Paint Corporation, collectively the "Reclamation Claimants." The Creditors' Committee also filed a general objection on behalf of the class of reclamation creditors.

The Creditors' Committee asserted the Reclamation Procedures Order granted substantive rights. Further, it argued that the reclamation claims were not extinguished and the Debtor is estopped from objecting to the reclamation claims.

The largest group of reclamation creditors, represented by Attorney Beal, argued that the court granted administrative priority upon issuing the Reclamation Procedures Order. Because creditors relied upon that order, it asserted that a prior treatment of reclamation claims was mandated and that treatment is binding upon the Debtor and other parties in interest.

The other Reclamation Claimants make similar arguments, all asserting that their claims are entitled to administrative expense payment and/or lien status. The gist of the argument is that the creditors relied upon the court's prior Reclamation Procedures Order.

To factually support their arguments, the Reclamation Claimants introduced some evidence. First, it was stipulated that the President and controlling shareholder of Farm Innovators, Inc., received a copy of the Reclamation Procedures Order and, in reliance upon the terms and conditions of the order, declined to take action to protect his corporation's interest as a reclamation claimant. If not for the Reclamation Procedures Order, it was stated that earlier bankruptcy court action would have been instituted to assert reclamation rights. It was stipulated that Farm Innovators, Inc., relied upon the court's Reclamation Procedures Order.

It was also stipulated that the Affidavit of Jack Ezon would be admitted into evidence. Mr. Ezon is the Executive Vice President of Collegeware USA One, Inc. After the bankruptcy filing, it was requested that Collegeware's merchandise be returned. Mr. Ezon testified he spoke with a representative of the Debtor and was told that a reclamation claim "would be paid in full for goods received within 10 days." Ezon Affidavit, ¶ 4. Ezon was asked not to interfere with the goods in transit and he did not do so. *Id.* Ezon's interpretation of the Reclamation Procedures Order was that the preliminary valid reclamation claim of Collegeware, in the amount of $17,115.29, would be paid as an administrative expense or be secured by a lien. *Id.* As a result of the telephone conversation with the Debtor's representative, and in reliance upon the Reclamation Procedures Order, Ezon did not consult an attorney or take any legal action to recov-

liminary Valid Reclamation Amount" in accordance with the Debtor's calculations. The Reclamation Claimants, in each instance, asserted a higher reclamation claim amount. However, given this court's Scheduling Order, which bifurcated the treatment of the

reclamation claims from the amounts of the individual claims, this court now does not find it necessary to specifically set forth the disagreements between the Debtor and the reclamation creditors regarding their individual claim amounts.

er the goods it shipped to the Debtor.[12] *Id.*

During the proofs at the hearing, no party presented *any* evidence that the Prepetition Lenders lacked good faith in their lending relationship with the Debtor.[13] The "Global Settlement" and the order which approved that settlement were admitted into evidence. Trans. at 32–33. The Global Settlement, which is binding upon all parties in interest, granted the Prepetition Lenders a very broad release in exchange for them agreeing to leave substantial proceeds of sale with the estate for the benefit of its general unsecured creditors. *See* Global Settlement Order, ¶ 2. The Plan and the confirmation order, dated May 3, 2002, were also admitted into evidence. Trans. at 32. The confirmed Plan, as required by the Global Settlement, also grants a very broad release to the Prepetition Lenders.

Although the record is somewhat sparse and lacks any *direct oral* testimony, the court finds that the Prepetition Lenders are "good faith purchasers" within the meaning of Section 2–702 of the Uniform Commercial Code. Further, given the language of the confirmed chapter 11 Plan, the court finds that the Reclamation Claimants are now precluded from raising or challenging the Prepetition Lenders' "good faith purchaser" status.

On May 2, 2002, the court held a scheduling conference about this contested matter. In its May 7, 2002 Scheduling Order Regarding Reclamation Claims Motion, the court bifurcated the issues. *See* Recla-

mation Scheduling Order, ¶ 1; Dkt. No. 1303. Basically, the hearing on the contested matter would first focus upon the validity and priority issues of the reclamation claims raised by the parties. Also considered would be any issues pertaining to estoppel, *res judicata*, and law of the case. Only after these issues were determined would the second portion of the contested matter, i.e., the "amount of each reclamation claim," be considered at a future hearing. On July 19, 2002, the court renoticed the bifurcated hearing to be heard on September 9, 2002. All other provisions of the scheduling order remained effective.

## III. DISCUSSION

A. *Initial Validity Of The Reclamation Claims.*

▮ Section 546(c) of the Bankruptcy Code states:

(c) Except as provided in subsection (d) of this section, the *rights and powers of a trustee* under sections 544(a), 545, 547, and 549 of this title *are subject to any statutory or common-law right of a seller of goods* that has sold goods to the debtor, in the ordinary course of such seller's business, *to reclaim such goods* if the debtor has received such goods while insolvent, but–

(1) *such a seller* may not reclaim any *such goods* unless *such seller* demands in writing reclamation of such goods-

(A) before 10 days after receipt of such goods by the debtor; or

---

**12.** There was no cogent evidence that any creditor could have stopped goods in transit to prevent delivery to the Debtor and the attachment of Prepetition Lenders' liens to the goods subsequently received by the Debtor.

**13.** This issue was expressly raised by the court in its Scheduling Order Regarding Rec-

lamation Claims Motion. *See* Reclamation Scheduling Order, ¶ 1.g; Dkt. No. 1303 ("Are the Prepetition Lenders 'good faith purchasers' under Section 2–702 of the Uniform Commercial Code? Are the Reclamation Claimants precluded from raising this issue because the issue has been decided under previous court orders?").

(B) if such 10–day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to *a seller with such a right of reclamation* that has made such a demand only if the court–

(A) grants the claim of *such a seller* priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures *such claim* by a lien.

11 U.S.C. § 546(c) (emphasis supplied). Section 546(c) does not create any right of reclamation; instead it recognizes the reclamation rights established by state law. *In re Victory Markets, Inc.*, 212 B.R. 738, 741 (Bankr.N.D.N.Y.1997) ("the section does not create an independent right of reclamation, but rather recognizes such a right if the seller has a right to reclaim under applicable non-bankruptcy law").[14] Section 546(c) "preserves the right of a creditor/seller to reclaim goods sold to an insolvent debtor if the seller can establish: (1) that it has a statutory or common-law right to reclaim the goods; (2) that the goods were sold in the ordinary course of the seller's business; (3) that the debtor was insolvent at the time the goods were received; and (4) that it made a written demand for reclamation within the statutory time limit after the debtor received the goods." *Victory Markets*, 212 B.R. at 741 (citations omitted). Section 546(c) "is the exclusive remedy of a creditor who seeks to reclaim goods sold to an insolvent debtor." *Id.* (citations omitted).

■ For the purposes of this opinion, the court will assume that each Reclamation Claimant holds a claim and has met the four *Victory Markets* elements enumerated above.[15] This does not end the court's analysis. For the Reclamation Claimants to be entitled to an administrative claim or a lien, they must be sellers "with such a right of reclamation." 11 U.S.C. § 546(c)(2). In order to possess "such a right," the sellers must have a statutory right under the UCC. 11 U.S.C. § 546(a) ("rights ... are subject to any statutory or common-law right of a seller of goods").[16] However, under the UCC, a seller seeking to reclaim goods "is subject to the rights of a buyer in the ordinary course or other good faith purchaser ...." UCC § 702(3). The question then becomes whether conflicting rights exist to impede the Reclamation Claimants' initial (or as phrased by the Debtor, "preliminary") rights.

B. *Reclamation Creditors' Rights Versus Prepetition Lenders' Rights.*

■ The Eighth Circuit's opinion in *Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842 (8th Cir.1992), is well-reasoned and very compelling. This court largely accepts the analysis and conclusions of *Pester Refining*.

---

**14.** Uniform Commercial Code ("UCC") § 2–702 governs the existence and extent of a creditor's reclamation rights. This conclusion is supported by the language in § 546(c) that refers to "any statutory or common-law right" to reclaim "such goods" provided by "such seller" which takes requisite action. In this contested matter, because the Debtor had more than 300 stores in many states, the UCC provisions for each applicable state govern a particular creditor's reclamation rights. Because there are no material differences in the various state statutes permitting reclamation, this court believes it is unnecessary to cite or quote each state's UCC § 2–702 provision in this opinion.

**15.** Although there is a dispute regarding the amounts of the Reclamation Claimants' preliminary valid reclamation claims, determination of the amounts will be subject to a later hearing if necessary.

**16.** None of the Reclamation Claimants have asserted any common-law rights.

The facts in *Pester Refining* are not uncommon in a commercial world where very large corporate bankruptcies seem to occur with greater frequency than in prior business downturn cycles. Less than ten days prior to Pester's chapter 11 filing, Ethyl Corporation, the reclamation creditor, delivered products to Pester's refinery in Kansas. The bill for the credit sales was approximately $127,000. Two days after filing, Pester received the reclamation creditor's written demand for return of the product. Although Pester still had the identifiable product, it refused to return it. The product was "also subject to perfected security interests of various secured creditors whose secured claims exceeded the value of Pester's assets." *Pester Refining*, 964 F.2d at 844. After the reclamation creditor filed an adversary proceeding, the bankruptcy court granted a judgment in favor of the reclamation creditor for the invoice amount of the product shipped.[17] *Id.*

The major issue addressed by *Pester Refining* is "a seller's right to reclaim goods from a buyer in bankruptcy when the goods are subject to superior competing claims of the buyer's secured creditors." *Pester Refining*, 964 F.2d at 844. This is also the principal issue to be decided in this contested matter.

Although Section 2–702(2) of the UCC gives a remedy to "a narrow class of cases in which reclamation would be allowed without proof of a misrepresentation as to solvency," UCC § 2–702(3) "also [makes] the seller's reclamation right 'subject to' the rights of good faith purchasers from the buyer." *Pester Refining*, 964 F.2d at 844. "Since most secured creditors are good faith purchasers under the UCC, [§ 2–702] has the effect, in priority terms, of placing the reclaiming seller behind the insolvent buyer's secured creditors who have security interests in the goods, but ahead of the buyer's general unsecured creditors." *Pester Refining*, 964 F.2d at 845 (citations omitted). "This prioritizing is consistent with the historic roots of the reclamation remedy." *Id.*

In this case, the court has made an explicit finding that the Prepetition Lenders are good faith purchasers within the meaning of UCC § 2–702(3).[18] Therefore, the Reclamation Claimants' right to the delivered goods is subordinate to the Prepetition Lenders' blanket lien.

## C. *Does The Value Of The Collateral Support The Reclamation Creditors' Subordinate Liens In The Goods Delivered To The Debtor?*

▇▇▇▇ As noted in *Pester Refining*, the mere fact that a lienholder with a superi-

---

**17.** Pester's chapter 11 plan was confirmed after the adversary proceeding was filed but before trial took place. The Eighth Circuit discusses the possible effect of a confirmed plan upon initial reclamation rights versus the perfected secured creditor. To the extent the Eighth Circuit may be correct in its analysis of this issue, this court has carefully reviewed the Debtor's Plan and confirmation order. The rights of the Reclamation Claimants and the Prepetition Lenders are not affected by the confirmed Plan.

**18.** *See* p. 332 above. As to determination of a perfected secured creditor's "good faith" under UCC § 2–702, this court also follows the analysis in *Mitsubishi Consumer Elecs. America, Inc. v. Steinberg's, Inc. (In re Steinberg's, Inc.)*, 226 B.R. 8, 11 (Bankr.S.D.Ohio 1998) (after considering various approaches utilized by other courts, it was held "that a reordering of the priorities may occur if the reclaiming seller shows that the perfected secured creditor violated the subjective honesty in fact standard of [UCC § 1–201(19)]"). In this contested matter, none of the Reclamation Claimants brought forth any evidence whatsoever that the Prepetition Lenders violated the honesty in fact standard. Indeed, the exhibits reviewed by the court demonstrate, by preponderance of evidence, that the Prepetition Lenders acted in good faith.

or interest exists does not extinguish the subordinate position of a reclaiming seller. *Pester Refining*, 964 F.2d at 846 ("In the UCC context, when the right to reclaim is 'subject to' the rights of secured creditors, that means the right is subordinate or inferior to the security interests, not that it is automatically and totally extinguished.") (citations omitted). The question then becomes whether there is sufficient value to support the subordinate reclaiming seller's interest in the goods. *Cf.* 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."). The court has found that the value of all collateral in this estate is not more than $205,000,000. *See* p. 328 above and n.5. The Prepetition Lenders' indebtedness is approximately $337,000,000. *See* p. 328 above. Therefore, because no residual value remains after partial satisfaction of the Prepetition Lenders' secured claim, there is no value left to maintain Reclamation Claimants' subordinate position.[19]

> When there are goods or traceable proceeds available to reclaim, the alternative remedies in § 546(c)(2) provide needed flexibility. But when the secured creditors have satisfied their claims *out of the goods to be reclaimed,* granting § 546(c)(2) relief would afford the reclamation seller something it does not have under the UCC—a priority interest in the buyer's assets other than the goods to be reclaimed.

*Pester Refining,* 964 F.2d at 847 (emphasis in original) (citations omitted). Therefore, "the bankruptcy court does not 'deny reclamation' in recognizing that the reclamation right no longer has value; therefore the alternative remedies of § 546(c)(2) do not come into play." *Id.* Because the Reclamation Claimants' rights in the delivered goods are worthless, they have no lien on any assets of the estate and no special claim to the proceeds from the sale of the Debtor's inventory. Likewise, the Reclamation Claimants are not entitled to an administrative expense claim.[20] This court

19. Two points need to be made. First, in this chapter 11 case, the Prepetition Lenders agreed to leave sale proceeds with the estate pursuant to the Global Settlement and the confirmed Plan. However, those funds were earmarked for the unsecured creditors under the Plan. So as to not dilute the percentage to be received by unsecured creditors, the Prepetition Lenders also waived their unsecured deficiency claim. Second, although a subordinate reclaiming seller might seek to compel a superior secured creditor to marshal and satisfy its secured claim from assets other than the goods delivered by the subordinate reclaiming seller, under the facts of this case, there exists insufficient noninventory collateral to compel the equitable remedy of marshaling. *Cf. American Saw & Mfg. Co. v. Bosler Supply Group (Matter of Bosler Supply Group),* 74 B.R. 250, 253–55 (N.D.Ill.1987) (after the senior secured creditor was fully paid, the junior reclamation creditor could enforce its rights as an administrative claim against the remaining estate assets). This result is tantamount to the equitable remedy of marshaling. However, any such marshaling argument by the Reclamation Claimants in this contested matter would fail.

20. *Isaly Klondike Co. v. Sunstate Dairy & Food Prods. Co. (Matter of Sunstate Dairy & Food Prods., Inc.),* 145 B.R. 341 (Bankr. M.D.Fla.1992) basically analyzes the issues consistent with the *Pester Refining* rationale. *Sunstate Dairy* recognizes that outside of bankruptcy the UCC would mandate that the reclaiming seller's interest is subordinate to the secured creditor that has an interest in the buyer's after-acquired inventory. However, *Sunstate Dairy* states that "[d]espite the virtual ineffectiveness of a secured claim, the award of an administrative expense under § 546(c) is appropriate." *Sunstate Dairy,* 145

has not "denied" reclamation rights under § 546(c)(2). It has merely ruled that such rights have no value and therefore no longer exist.

D. *Did The Reclamation Procedures Order Give The Reclamation Claimants Greater Rights Than Provided Under § 546(c)?*

The Reclamation Claimants assert that the Reclamation Procedures Order, which incorporates the Reclamation Procedures Motion, grants them substantive rights, i.e., claims "entitled to priority as administrative expenses or secured by a lien." Reclamation Procedures Order, ¶ f, at 2. In the findings above, the court has already rejected such an interpretation of its order because the totality of language, when naturally reading the order, does not mandate such a conclusion. It is improper to focus on certain words or phrases and ignore the others. However, because the Reclamation Claimants have asserted a whole panoply of legal theories, the court will address each theory in turn.

1. *Res Judicata.*

■ The elements of *res judicata,* or claims preclusion, are fourfold:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

B.R. at 346 (rationalizing that the delivered product and proceeds benefitted the debtor by providing funding in the chapter 11 case or by reducing the debtor's indebtedness). This court disagrees with awarding an administrative expense claim under such circumstances. All unsecured creditors provide value to a debtor or help reduce a debtor's indebtedness whether they may have reclamation rights or not. Unless the Bankruptcy Code grants a priority to a creditor, *see, e.g.,* 11 U.S.C. § 507(a), the equality of distribution principle mandates that all unsecured creditors shall be treated alike. *See, e.g., Matter of Leeds Bldg. Prods., Inc.,* 141 B.R. 265, 269 (Bankr. N.D.Ga.1992) ("If this Court granted a lien or administrative claim to a seller whose right to reclamation was worthless outside of bank-

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action[.]

*Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992) (citations omitted).

■ This court did not make a final decision on the merits when it entered the Reclamation Procedures Order. This contested matter is not a "second action." There was no actual litigation in connection with the entry of the Reclamation Procedures Order. *Res judicata* does not apply to support the Reclamation Claimants' assertion that they were granted a lien or administrative claim status.

2. *Collateral Estoppel.*

■ According to the Sixth Circuit, "[c]ollateral estoppel requires that the precise issue in the later proceedings [had] been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981).[21]

ruptcy, the seller would, in essence, be given more rights than it would otherwise have under state law, which is contrary to the 'equal treatment of creditors' concept of the Code."); *Toshiba America, Inc. v. Video King, Inc. (In re Video King, Inc.),* 100 B.R. 1008, 1017 (Bankr.N.D.Ill.1989) ("[Section 546(c)] is not intended to enhance such nonbankruptcy entitlements or to give value to rights which had no value outside of the bankruptcy context."). There is no persuasive reason to grant a reclamation creditor an administrative claim when there exists no value to support its UCC § 2–702 potential rights.

**21.** Although the Sixth Circuit has discussed collateral estoppel in bankruptcy adversary

■ In this contested matter, the asserted first proceeding, which resulted in the Reclamation Procedures Order, decided no substantive issues. There was no litigation of, or opportunity to litigate, the facts and legal issues subject to this, the alleged second, contested matter. Collateral estoppel, also known as issue preclusion, does not bar the Debtor from litigating the ultimate validity and enforceability of the various reclamation claims.

### 3. Equitable Estoppel.

■ The next theory by which the Reclamation Claimants seek to bar the Debtor's litigation of the merits is equitable estoppel. The Sixth Circuit has set forth the necessary proofs thusly:

> The elements of an equitable estoppel claim, as announced by the *Armistead* [*Armistead v. Vernitron Corp.* 944 F.2d 1287, 1298 (6th Cir.1991)] panel, are as follows: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware

of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir.1998) (ERISA plan case) (citing *Armistead*, 944 F.2d at 1298).[22]

■ In this instance, the conduct of the Debtor was to request utilization of certain reclamation procedures in connection with the chapter 11 case. The language in the Reclamation Procedures Order was adopted by this court. The only "fact" represented in the order was that specified procedures would be followed to decide the validity and potential enforceability of reclamation claims at a later time during the chapter 11 case. Notwithstanding some possibly ambiguous language in the order, *see* n.9 above, such language does not constitute "the true facts." Given the language and tenor of the Reclamation Procedures Order, any asserted reliance that the Reclamation Claimants had been awarded administrative expenses is not reasonable and not justified. *See Trustees of the Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 593 (6th Cir.2000) ("[i]f, at the time when [a party] acted, such party had knowledge of the truth, *or had the means by which with reasonable diligence*

proceedings in published decisions after *Spilman*, those decisions focus on the "full faith and credit" of state court judgments and direct the bankruptcy courts to examine applicable state law. *See, e.g., Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir.1995). This court has quoted the *Spilman* decision because it states the *federal law* collateral estoppel elements. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 319 (6th Cir.1997) ("the Court in *Spilman* applied principles of collateral estoppel as articulated by federal courts instead of looking [at state law]"). Because the Reclamation Claimants assert this federal court's Reclamation Procedures Order provides the basis for

application of collateral estoppel, the *Spilman* elements are properly reviewed.

22. A bankruptcy decision collapses the elements into three. "The elements of equitable estoppel are: (1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies on the facts; and (3) the other party is harmed by the reliance." *McLouth Steel Prods. Corp. v. Quaker Chem. Co. (In re McLouth Steel Prods. Corp.)*, 213 B.R. 978, 985 (E.D.Mich.1997) (reclamation case). Regardless of whether this court considers five elements or three elements, the result is the same.

*he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means,* he cannot claim to have been misled by relying upon the representation or concealment") (quoting *Heckler v. Community Health Servs.,* 467 U.S. 51, 59 n. 10, 104 S.Ct. 2218, 2224 n. 10, 81 L.Ed.2d 42 (1984)) (emphasis in original).

When the Reclamation Procedures Order was entered, it was contingent and interlocutory in nature. The language that the reclamation claims were "denied" should not be read with blinders on. Given the reservation of all rights, the hurdles of validity and the fact that the potential value of any reclamation interest was delayed for future determination, the denial was nothing more than a provisional denial until such time that the facts could be assessed and the legalities decided. Equitable estoppel does not bar the Debtor from filing the Substantive Reclamation Motion or prevent this court from deciding the merits of the reclamation issues.

### 4. *Judicial Estoppel.*

The Creditors' Committee's objection, without much discussion, mentions "judicial estoppel" to attempt to support an argument that the Reclamation Procedures Order granted substantive relief, i.e., allowed administrative claims, to a certain category of creditors.

■■■ The Supreme Court states the rule of "judicial estoppel" thusly:

[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary posi-

tion, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (citations omitted). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine,* 532 U.S. at 749, 121 S.Ct. at 1815 (citations and internal quotation marks omitted). *See also Reynolds v. Commissioner,* 861 F.2d 469, 472 (6th Cir.1988) (the doctrine "protects the integrity of the judicial process;" a party cannot take an inconsistent position to one successfully achieved by the same party in an earlier proceeding).

While some courts remark that judicial estoppel prevents a party from "playing fast and loose" or "blowing hot and cold," *Reynolds,* 861 F.2d at 472 (citations omitted), the Creditors' Committee has accused the Debtor of engaging in "bait and switch" tactics.

■■■ This court disagrees. The Reclamation Procedures Order granted no substantive rights and, by entry of that order, no party prevailed. By filing the Substantive Reclamation Motion, the Debtor acted consistently with the requirements of the Reclamation Procedures Order. Any argument that this court should exercise discretionary judicial estoppel to bar a determination of the merits constitutes an enormous stretch of this theory.[23]

### 5. *Law of the Case.*

■■■ "Issues decided at an early stage of the litigation, either explicitly or

**23.** Nothing in this case comes close to the types of facts necessary to support judicial estoppel. All parties, including the Debtor, the Prepetition Lenders, the Creditors' Committee, the Reclamation Claimants, the other parties, and their respective attorneys, have consistently asserted positions on the basis of "facts and law" with courtroom cordiality. (Hopefully, there has been civility off the stage as well.)

by necessary inference from the disposition, constitute the law of the case." *Morris v. Schilling (In re Kenneth Allen Knight Trust)*, 303 F.3d 671, 676 (6th Cir. 2002) (quoting *EEOC v. United Ass'n of Journeymen of the Plumbing & Pipefitting Indus., Local 120*, 235 F.3d 244, 249 (6th Cir.2000)). One facet of the law of the case doctrine is "a single court [must] adhere to its own prior rulings without need for repeated reconsideration." *General Elec. Capital Corp. v. Hoerner (Matter of Grand Valley Sport & Marine, Inc.)*, 143 B.R. 840, 853 (Bankr.W.D.Mich.1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Proc.* § 4478, at 788 (1973 & Supp.1992)).

 The issue decided when the Reclamation Procedures Order was entered was *how* the litigation would proceed and not *what* the substantive rights were as between the opposing parties. The merits of the issue of whether the Reclamation Claimants hold an enforceable lien or an allowed administrative expense claim do not require a "repeated consideration" inasmuch as the merits, implicitly or explicitly, have not been previously decided. The law of the case doctrine does not apply under these circumstances.

#### 6. *"Detrimental Reliance."*

The gravamen of the Reclamation Creditors' plaint is that they "detrimentally relied" upon the terms of the Reclamation Procedures Order and they should not have their fortuitous (i.e., accidental) rights now challenged by the Debtor or the Prepetition Lenders. Although "detrimental reliance" is not a recognized legal theory, it may be visualized as some type of equitable amalgamation or hybrid of the estoppel family. Basically, the generic elements might be characterized as a subjective belief that a statement is true, subjective reliance that one's belief is true, and that detriment, e.g., adverse economic consequences, ensued.

Even if any such theory existed, the Reclamation Claimants would lose. There is no detriment that results from all parties having their day in court at a later time after the time-sensitive chapter 11 case issues were settled or adjudicated. Even if no procedures to litigate the reclamation claims had been established, and the Reclamation Creditors had filed adversary proceedings to determine their respective rights on day one of the chapter 11 case, the court sees no difference in the outcome. The facts would be the same, the governing statutes would be the same, the possible legal theories (mostly) would be the same, the hearing date would be about the same, and the results would be the same as written in this opinion.[24]

#### 7. *Possible § 506(c) Surcharge.*

 One of the reclamation claimants raised its desire to obtain a § 506(c) surcharge against the Prepetition Lenders. This issue may not be initially raised by a party other than a trustee or a debtor-in-

---

**24.** During the hearing, the court asked one of the Reclamation Claimants' attorneys what would be different if the Reclamation Procedures Order had not been entered. Although the very competent attorney did his best to explain why his clients lost rights by reliance upon the terms of that order, no prejudice to his clients was articulated. *See* Trans. at 14–18. *Cf. Matter of Reliable Drug Stores, Inc.*, 70 F.3d 948, 951 (7th Cir.1995) ("[The seller] did not rely to its detriment on the bankruptcy judge's order; its shipments and extensions of credit to [the debtor] preceded the commencement of the bankruptcy. By the time the case got under way, the only questions were whether [the seller] could reclaim the goods and, if not, how much money it would receive. The Bankruptcy Code permits the judge to substitute a lien or an administrative claim for the goods; the judge did so in this case; the question then becomes how much the administrative claim was worth.").

**340**

possession. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Even if a trustee, or a party holding derivative rights from the trustee, recovered a surcharge, the recovery would be for all creditors and not exclusively for the reclaiming seller. *Dock's Corner Assocs. v. Boyd (Matter of Great Northern Forest Prods., Inc.)*, 135 B.R. 46, 66–69 (Bankr.W.D.Mich.1991) (although a non-trustee entity may be granted derivative standing to recover a § 506(c) surcharge against a secured creditor, whatever is recovered benefits the entire estate rather than the individual claimant, based, in part, upon the equality of distribution principle). Given the above authority, the court determines that none of the Reclamation Claimants may rely upon asserted § 506(c) surcharge rights to justify an allowance of an administrative claim.[25]

## IV. CONCLUSION

The Reclamation Procedures Order did not determine any substantive rights. It only governed how future litigation regarding reclamation claims would be handled. Therefore, any argument by the Reclamation Claimants that the Reclamation Procedures Order mandates allowance of an administrative expense claim, or lien, is rejected. Although, for purposes of this opinion, all objecting Reclamation Claimants hold initially (or preliminarily) valid reclamation claims, the Prepetition Lenders, as good faith purchasers, hold superior rights. Because the value of the Debtor's collateral is insufficient to satisfy the secured claim of the Prepetition Lenders,

there exists no collateral value to support the Reclamation Claimants' subordinate rights in the specific inventory consisting of their goods delivered to the Debtor. Further, under the facts of this case, any possible marshaling argument that might be made by the Reclamation Claimants is futile. Therefore, all claims of the Reclamation Claimants shall be relegated to general unsecured claims and be treated as such under the confirmed Plan.[26] "[B]ad breaks are common in bankruptcy." *Reliable Drug Stores*, 70 F.3d at 951.

A separate order shall be entered consistent with this opinion.

---

**25.** This court decides this issue as a matter of statutory language and interpretation, irrespective of the fact that the confirmed Plan may also bar a surcharge against the Prepetition Lenders.

**26.** The court emphasizes that this opinion deals only with § 546(c) reclamation issues. It does not address any creditor's asserted "gap claim," *see* §§ 507(a)(2) and 502(f), or other administrative claim for goods that may be entitled to non-reclamation administrative priority, *see* § § 507(a)(1) and 503(b).