ELECTRONIC CITATION: 2004 FED App. 0004P (6th Cir.)
File Name: 04b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: PITTSBURGH-CANFIELD CORPORATION, et al., | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| YENKIN-MAJESTIC PAINT CORPORATION, THE VALSPAR CORPORATION, and MISSISSIPPI LIME COMPANY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. 03-8030 |
| | ) | |
| WHEELING-PITTSBURGH STEEL CORPORATION, | ) | |
| | ) | |
| Debtor-Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Youngstown
Nos. 00-43394 to 00-43402

Argued: November 5, 2003

Decided and Filed: May 3, 2004

Before: AUG, LATTA, and RHODES, Bankruptcy Appellate Panel Judges.
_____

**COUNSEL**

**ARGUED:** Kim Martin Lewis, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellants. Michael E. Wiles, DEBEVOISE & PLIMPTON, New York, New York, for Appellee. **ON BRIEF:** Kim Martin Lewis, Tim H. Robinson, DINSMORE & SHOHL, Cincinnati, Ohio, David L. Going, ARMSTRONG TEASDALE LLP, St. Louis, Missouri, for Appellants. Michael E. Wiles, DEBEVOISE & PLIMPTON, New York, New York, Scott N. Opincar, James M. Lawniczak, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

J. VINCENT AUG, JR., Chief Bankruptcy Appellate Panel Judge. Appellants, Yenkin-Majestic Paint Corporation, Valspar Corporation and Mississippi Lime Company (collectively, the "Appellants"), are vendors who filed timely reclamation claims against the Debtor, Wheeling-Pittsburgh Steel Corporation (the "Debtor"). Appellants now appeal the bankruptcy court's decision finding that their reclamation claims are not entitled to administrative expense priority pursuant to 11 U.S.C. § 546(c)(2) and relegating their claims to the status of general unsecured.

## I. ISSUES ON APPEAL

(1) Whether the bankruptcy court erred in denying administrative expense priority or a lien to reclaiming sellers whose goods were proposed to be consumed by the Debtor in its manufacturing activities.

(2) Whether the bankruptcy court erred in determining the validity and priority of reclamation claims pursuant to motion rather than adversary complaint.

(3) Whether the bankruptcy court erred in determining that the Appellants were not entitled to require a marshaling of the assets to protect their reclamation claims.

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). Accordingly, the Panel has jurisdiction to decide this appeal.

The order and judgment on appeal are "final" and may, therefore, be appealed as of right. 28 U.S.C. § 158(a)(1); *United States v. Hillsborough Holdings Corp. (In re*

2

*Hillsborough Holdings Corp.)*, 116 F.3d 1391, 1393-94 (11th Cir. 1997) (order finding that IRS' claim was not entitled to administrative expense priority was final, appealable order); *Beneke Co., Inc. v. Economy Lodging Sys., Inc. (In re Economy Lodging Sys., Inc.)*, 234 B.R. 691, (B.A.P. 6th Cir. 1999) (order disallowing portion of attorney fees and denying administrative expense priority to fees is final, appealable order).

The bankruptcy court's findings of fact are reviewed for clear error. Thus, a bankruptcy court's findings of fact may not be set aside unless clearly erroneous. Fed. R. Bankr. P. 8013*; Laguna Assoc. Ltd. P'ship v. Aetna Cas. & Surety Co. (In re Laguna Assoc. Ltd. P'ship),* 30 F.3d 734 (6th Cir. 1994). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made. *Stevens v. McGinnis, Inc.,* 82 F.3d 1353, 1356 (6th Cir. 1996). The bankruptcy court's conclusions of law are subject to *de novo* review. *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir. 1995). "De novo means 'deciding the issue as if it had not been heard before. No deference is given to the trial court's conclusions of law.'" *Tedeschi v. Falvo (In re Falvo),* 227 B.R. 662, 664 (B.A.P. 6th Cir. 1998) (citations omitted).

The Panel reviews the bankruptcy court's denial of administrative expense priority status for an abuse of discretion. *Economy Lodging Sys., Inc.*, 234 B.R. 691; *Gull Indus., Inc. v. John Mitchell, Inc. (In re Hanna)*, 168 B.R. 386 (B.A.P. 9th Cir. 1994).

### III. FACTS

The Debtor and other affiliate corporations filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on November 16, 2000. Prior to the filing of the petitions, the Appellants sold goods to the Debtor on open account, in the ordinary course of business for both the Debtor and the Appellants. Each of the Appellants made timely demand for reclamation pursuant to Uniform Commercial Code § 2-702 of certain goods delivered to the Debtor's plants in West Virginia and Ohio. Yenkin-Majestic Paint Corporation made demand on November 7, 2000, before the filing of the bankruptcy

petitions. The Valspar Corporation and Mississippi Lime Company made demand on November 17, 2000, after the filing of the petitions.

Prior to the Petition Date, all of the Debtor's inventory served as collateral to secure a credit agreement entered into by the Debtor and its affiliates and certain prepetition lenders (the "Prepetition Lenders") and Citibank, N.A., as agent. Relying on the Debtor's and its affiliates' schedules, the Appellants contend that on the Petition Date, the Debtor was indebted to the Prepetition Lenders in the maximum amount of $115 million and the indebtedness was secured by inventory in the amount of $245 million. Therefore, Appellants argue that the Prepetition Lenders were oversecured in the amount of $130 million. The Debtor received reclamation claims in the approximate amount of $5.4 million from 37 vendors. In the liquidation process provided for in the Reclamation Procedures Order described below, reclamation claims of approximately $2.9 million were verified by the Debtor.

Of significant importance in this case is the fact that on the Petition Date, the Debtor and its affiliates moved for approval of a debtor-in-possession credit facility (the "DIP Facility"). Pursuant to the final order approving the DIP Facility (the "Post-Petition Financing Order") entered December 13, 2000, (1) all of the Prepetition Lenders were paid in full, (2) the liens or security interests of the Prepetition Lenders were assigned and transferred, to the extent permitted by applicable law, to the lenders under the DIP Facility (the "DIP Lenders"), (3) the DIP Lenders were found to be entitled to a "superpriority" status pursuant to § 364(c) of the Bankruptcy Code and (4) the DIP Lenders' claims were secured by, among other things, a floating first priority, perfected lien upon all of the Debtor's and its affiliates' inventory and proceeds thereof. Under the DIP Facility, the Debtor and its affiliates were authorized to borrow up to $290 million. Paragraph 14 of the Post-Petition Financing Order provides:

> The Obligation under the DIP Credit Facility shall be an allowed administrative expense claim . . . *with priority* . . . under Bankruptcy Code section 364(c)(1) over *all* administrative expense claims and unsecured claims against the Debtor[], *now existing* or hereafter arising, of any kind or nature whatsoever *including, without limitation, administrative expenses of*

*the kinds specified in or ordered pursuant to Bankruptcy Code sections . . .*
*546(c).*

(emphasis added.)  None of the Appellants appealed the Post-Petition Financing Order that in effect greatly increased the exposure of their inventory to this larger, floating lien.

On March 8, 2001, the bankruptcy court entered an order (the "Reclamation Procedures Order") (a) prohibiting third parties from interfering with the Debtor's receipt, use or disposition of goods and (b) establishing procedures for the liquidation and treatment of reclamation claims.  As required by the Reclamation Procedures Order, the Debtor and its affiliates filed Debtors' First Amended Report Regarding Reclamation Demands (the "Reclamation Claims Report").  That report specified that the amount of each claim set forth in the report represents the amount of "[g]oods identified in the reclamation claim which were (i) in the possession of the Debtor[], (ii) specifically identifiable and (iii) unconverted as to form, in each case as of the date on which the reclamation demand was received by the Debtor[]."  Pursuant to the Reclamation Claims Report, the Appellants have reclamation claims in the following amounts:

| Vendor | Amount of Claim |
| --- | --- |
| Yenkin-Majestic Paint Corp. | $107,612 |
| Mississippi Lime Co. | $143,353 |
| Valspar Corp. | $203,989 |

The amount of each reclamation claim agreed to by the parties was "deemed liquidated without any further action by the Debtor or further action of the Court, *subject to such further defenses as may exist by reason of liens granted to the Debtors' secured creditors.*"  Finally, the Reclamation Procedures Order provided that "[v]endors shall not be required to initiate adversary proceedings or to take any procedural steps (other than those set forth above) in order to preserve or perfect their Reclamation Demand."

With respect to determining the effect of the secured creditors' liens on the liquidated reclamation claims, the Reclamation Procedures Order provided:

(f) Following the determination of all of the Vendors' Reclamation Claim Amounts, . . . the Debtors may commence further proceedings to determine the extent to which the Reclamation Claim Amounts are subject to further defenses by reason of liens granted to the Debtors' secured creditors.  In the

5

alternative, the Debtors may propose to resolve such issues through a proposed plan of reorganization that specifies the extent to which the Reclamation Claims shall be treated as allowed administrative expense priority claims.

As noted above, the Reclamation Claims Report set forth the value of each Appellants' inventory remaining in the possession of the Debtor at the time the respective reclamation demand was made. Pursuant to the Reclamation Procedures Order, the Debtor was authorized to and continued to use Appellants' inventory in its business practices.

On January 7, 2003, the Debtor filed a motion (the "Reclamation Motion") requesting the bankruptcy court to determine that Appellants' claims were not entitled to administrative expense status but were merely unsecured claims. The basis for the Debtor's Reclamation Motion was that all of the goods that were subject to the Appellants' reclamation demands were sold in the ordinary course of the Debtor's business and the proceeds were applied to repay the priority obligations under the DIP Facility.

The Appellants objected to the Debtor's Reclamation Motion on the basis that (1) the plain language of § 546(c) required the bankruptcy court to grant the Appellants an administrative claim since the court had denied them the right to reclaim the inventory, (2) the secured creditors were oversecured, (3) the Debtor had failed to follow proper procedure in bringing the Reclamation Motion, and (4) The Debtor was estopped by the bankruptcy court's prior orders from arguing that the Appellants' claims were unsecured.

Oral arguments on the Reclamation Motion and objections were heard on January 30, 2003. By order entered March 13, 2003, the bankruptcy court overruled Appellants' objections and held that reclaiming sellers have no greater rights in bankruptcy law than they hold under state law, and that under applicable state law, a seller's rights are limited to recovery of goods not yet sold. Inasmuch as the goods subject to the Appellants' reclamation demands had been consumed by the Debtor in the manufacturing process, they were no longer available for recovery, and the Appellants' rights were extinguished. Thus, as the Appellants had no rights under state law, they had no rights to administrative priority under bankruptcy law. Appellants filed this timely appeal.

## IV. DISCUSSION

With respect to reclamation rights, the Bankruptcy Code provides:

[T]he rights and powers of a trustee . . . are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor received such goods while insolvent, but–

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods–

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the com-mencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court–

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

11. U.S.C. § 546(c). Section 546(c) "preserves reclamation rights as they exist outside of bankruptcy and under state law. . . . The reclaiming seller has the burden of proof under § 546(c) by a preponderance of the evidence." *Mitsubishi Consumer Electronics Amer., Inc. v. Steinberg's, Inc. (In re Steinberg's, Inc.)*, 226 B.R. 8, 10 (Bankr. S.D. Ohio 1998) (internal quotations and citations omitted). The parties are in agreement that the laws of the states of Ohio and West Virginia apply in this case.

In virtually every state, a vendor's right of reclamation is governed by § 2-702 of the Uniform Commercial Code. As adopted in Ohio and West Virginia, the UCC provides:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article (section 2-403). Successful reclamation of goods excludes all other remedies with respect to them.

7

Ohio Rev. Code § 1302.76 (West 2003); W. Va. Code § 46-2-702 (West 2003).

The right of reclamation is a rescissional remedy, based upon the theory that the seller has been defrauded. Under the Uniform Sales Act (the predecessor to Uniform Commercial Code, Article 2), a seller could only reclaim goods upon a showing that the buyer misrepresented its solvency. *See Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.)*, 964 F.2d 842, 844 (8th Cir. 1992). The Uniform Commercial Code expanded the remedy by allowing reclamation in certain circumstances without proof of misrepresentation. *Id.* Because the buyer retains the apparent authority to deal with goods, the sale of goods to a good faith purchaser cuts off a seller's right to reclaim. *Id.* Most secured creditors are good faith purchasers under the Uniform Commercial Code, thus the rights of a reclaiming seller generally will be inferior to those of a secured creditor who has a security interests in the goods but superior to those of the buyer's general unsecured creditors. *Id.* at 845.

None of the Appellants contest the fact that any reclamation right they possess is subject to the security interest of the DIP Lenders. What they contest is the meaning of the phrase "subject to" as used in § 546(c)(2). The facts further indicate that the Debtor conceded all issues regarding the Appellants' reclamation claims except the legal issue of the effect that the secured creditors' claims have on the value of the Appellants' reclamation claims.[1]

---

[1] Pursuant to the Reclamation Procedures Order, the Debtor was required to provide in the Reclamation Claims Report "Debtors' reasons for excluding any portion of any Reclamation Demand from the corresponding Reclamation Claim Amount, *including all known legal bases for excluding such value."* Since the Debtor did not reserve any defenses other than the effect of any liens granted to the Debtor's secured creditors, it conceded the requirements of § 546 that: (1) The Appellants' each sold the Debtor inventory in the ordinary course of their respective business; (2) the Debtor received the inventory while it was insolvent; (3) each Appellant demanded return of its inventory in writing within the time prescribed; and (4) the Debtor was still in possession of a portion of the inventory when its received the respective Appellant's reclamation demand. *See also McLouth Steel Prods. Corp. v. Quaker Chem. Co. (In re McLouth Steel Prods. Corp.)*, 213 B.R. 978, 984 (E.D. Mich. 1997) (setting out elements reclaiming seller must prove to establish valid reclamation claim).

The Panel reviews the effect of the DIP Lenders' liens on the Appellants' reclamation claims de novo and must determine whether the Appellants' reclamation claims have any value where all of the Debtor's inventory is encumbered by a properly perfected lien on all of the Debtor's current and after-acquired inventory.[2] None of the individual Appellants can specifically identify their own goods, if any, remaining in the Debtor's possession because of the fungible nature of the goods. Further, even if we assume the Debtor's secured creditors (either the Prepetition Lenders or the DIP Lenders) were oversecured at one point, no one Appellant's goods were at any time of sufficient value to pay either the Prepetition Lenders or the DIP Lenders in full.

Reclamation Claims Analysis: Where the Debtor's inventory is subject to a valid and properly secured claim, there are two lines of cases interpreting the rights of reclaiming sellers to receive a lien or administrative expense priority under § 546(c).

A. Regardless of the value of claim, the reclaiming seller is entitled to administrative expenses priority or lien: This is the minority view and is relied upon by the Appellants.

This line of cases looks only at the requirements of § 546(c) that (1) the reclaiming seller sold inventory to the debtor in the ordinary course of business; (2) the debtor received the inventory while it was insolvent; (3) the reclaiming seller demanded return of its inventory in writing within the time prescribed; and (4) the debtor was still in possession of the inventory when its received the reclaiming seller's reclamation demand. *McLouth Steel Prods. Corp.*, 213 B.R. at 984. Obviously because of the concessions made by the Debtor in the Reclamation Claims Report, the Appellants meet each of these requirements. If these requirements are met, the courts in this first line of cases generally find that the reclaiming seller is entitled to a lien or administrative expense to the full extent of the seller's valid reclamation claim as of the time the seller sent notice to the debtor. *See Isaly*

---

[2]Pursuant to paragraph 3 to the Post Petition Financing Order the DIP Lenders were granted valid and perfected security interests in and liens upon all present and after-acquired property of the Debtor. Further, pursuant to paragraph 14 of that order, the DIP Lenders were granted a superpriority administrative claim over all administrative expenses, including those provide for under § 546(c).

*Klondike Co. v. Sunstate Dairy & Food Prods. Co. (In re Sunstate Dairy & Food Prods. Co.)*, 145 B.R. 341, 346 (Bankr. M.D. Fla. 1992) ("Once a right of reclamation is acknowledged in bankruptcy, [reclaiming seller] has a right to obtain from this Court a lien or administrative expense award."); *In re Roberts Hardware Co.*, 103 B.R. 396, 399 (Bankr. N.D.N.Y. 1988) (granting administrative claim where secured creditors "superior status precludes [reclaiming seller's] ability to exercise its right of reclamation with respect to the goods and any ensuing proceeds."); *Harris Trust & Sav. Bank v. Wathen's Elevators, Inc. (In re Wathen's Elevators, Inc.)*, 32 B.R. 912 (Bankr. W.D. Ky. 1983) (without discussion of whether secured creditor was over or undersecured, the bankruptcy court granted reclaiming sellers a lien junior to that of priority secured creditor and stated bankruptcy court would determine exact amount of claims at a later date); *Ohio Farmers Grain & Supply Assoc. v. Melvin Liquid Fertilizer Co., Inc. (In re Melvin Liquid Fertilizer Co., Inc.)*, 37 B.R. 587 (Bankr. S.D. Ohio 1984) (again without discussion of whether the secured creditor was over or undersecured, the bankruptcy court granted reclaiming seller's claim administrative expense priority, secured by a lien *on the property of the estate* but subordinate to the existing lien of the secured creditor).

The results of this first line of cases are justifiably criticized by the second line of cases on two bases. First, they fail to consider the requirement of § 546(c) that the reclaiming seller must have been entitled to a reclamation claim under state law. If that claim would have no value under state law, it cannot have any value under the Bankruptcy Code. *See In re Quality Stores, Inc.*, 289 B.R. 324, 333 (Bankr. W.D. Mich. 2003) (court's analysis of whether a reclaiming seller is a seller "with such a right of reclamation" as required by § 546(c) does not stop after the court determines that the reclaiming seller has met the initial requirements of § 546(c)). As a result of this first flaw, this line of cases elevate the reclaiming sellers to an unwarranted status above the general unsecured class. They do this by giving the reclaiming seller's claim administrative expense priority status without considering the value of the original reclamation claim over and above the priority interest of the secured creditor or by giving the reclaiming seller a lien in other assets of the bankruptcy estate in which the reclaiming seller originally had no interest.

The Eighth Circuit has found that:

> If reclamation is denied[,] the court *must* choose one of two alternatives. Under § 546(c)(2)(A) the court may treat the claim as an administrative expense priority under § 503(b), or under § 546(c)(2)(B) the court may secure such claim by a lien. *Such lien is in the nature of a lien on the assets of the bankruptcy estate, including the goods so delivered.*

*Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.)*, 795 F.2d 676 (8th Cir. 1986) (citing *In re Coast Trading Co., Inc.*, 744 F.2d 686, 692 (8th Cir. 1984)) (emphasis added). In their reply brief, the Appellants rely on *Griffin Retreading*. However, the Appellants misstate the importance of the decision because the Eighth Circuit specifically indicated in *Griffin Retreading* that it was not addressing the effect that the interests of the secured creditor in that case had on the seller's reclamation claim. The Eighth Circuit stated that:

> The conflicting interest of a secured creditor vis-a-vis the rights of the reclaiming creditor, . . . must await the day when the conflict between such competing interests is ripe for determination. The court is not unmindful of the various decisions on the subject. However, since this action is not one between the competing interests of the reclaiming creditor and the secured creditor, but rather involves the narrower issue of the appropriateness of granting the alternative remedies under 11 U.S.C. § 546(c)(2)(A) or (B), such cases are not dispositive.

*Griffin Retreading*, 795 F.2d 676, 680 (citations omitted). As discussed below, in *Pester Refining Co.*, the Eighth Circuit did later address this specific issue of the effect of the secured creditor's prior lien on the value of the reclaiming seller's reclamation claim. Its analysis was not favorable to the Appellants.

B. <u>Reclaiming seller is not entitled to administrative expense priority or lien without showing that claim has value outside of bankruptcy</u>: In the second line of cases, most of the courts recognize that the mere presence of a secured creditor's prior lien in a debtor's inventory is not the equivalent of automatic extinguishment of the reclamation right. *Pester Refining Co.*, 964 F.2d 842, 846; *In re Leeds Bldg. Prods., Inc.* 141 B.R. 265, 268 (Bankr. N.D. Ga. 1992). These courts emphasize that the reclaiming seller is entitled to a lien or administrative expense claim only to the extent that the value of the *specific* inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in

11

the debtor's inventory. *In re Leeds Bldg. Prods.,* 141 B.R. 265. Likewise, the Appellants here are not entitled to a lien or administrative priority status ahead of the general unsecured creditors in other assets of the bankruptcy estate.

> We choose to follow the well-reasoned line of cases which hold that the reclaiming seller is entitled to an administrative claim in any *surplus* proceeds remaining after the perfected secured creditor's interest has been satisfied or released.

*Steinberg's,* 226 B.R. at 12 (emphasis added). In *Steinberg's*, there was only one secured creditor and one reclaiming seller. It is also clear from the case that all of the collateral referred to was sold to Steinberg's by the one reclaiming seller. Therefore, any *surplus* proceeds resulted from the sale of the particular reclaiming seller's collateral, not from other estate assets.

> [I]f the goods are not returned to the seller, the seller must be given alternative remedies under section 546(c)(2), i.e., an administrative expense priority claim or a secured claim. In this case, however, the administrative expense priority claim or the secured claim may only be paid from the residual value of the goods after payment of all secured claims collateralized by the goods. If, in satisfying their claims, secured creditors take the entire value of the goods, the seller's administrative expense claim or lien is worthless and *may not be satisfied from other assets of the estate.*

5 *Collier on Bankruptcy* ¶ 546.04[2][a] at 546-32 (Lawrence P. King, ed., 15th ed. rev. 2002) (emphasis added).

> As the Eighth Circuit explained in *Pester Refining*, the presence of a lien creditor does not extinguish a seller's reclamation rights; it only subordinates them to whatever rights the lien creditor possesses. Thus, the issue is whether Appellants' subordinated right[s] of reclamation ha[ve] any value. The following example is useful. If the seller exercised its state law right to reclaim and was given goods subject to the claims of a secured creditor, the seller would have to pay the secured creditor the value of its lien *before* obtaining possession. Alternatively, if the buyer files for bankruptcy relief, and the seller is not allowed to reclaim the goods, the seller must be given a comparable remedy in the form of either an administrative expense claim or a substitute lien. But the administrative expense claim or the substitute lien can only be paid from the residual value of the goods after payment of the secured claim collateralized by the goods. In other words, if the lien creditor is oversecured, a seller's reclamation right *might* have some value. . . . [T]he result in bankruptcy mirrors the result under state law. As the

bankruptcy court explained in *In re Primary Health Systems, Inc.*, Congress did not intend to grant additional rights to sellers when it drafted section 546(c). *Under state law a reclaiming seller's right to reclaim would be valueless if the goods were worth less that the value of a floating lien. If the remedy under state law has no value, [then] the substitute remedy afforded by the Code would, likewise, have no value.*

*In re Houlihan's Rest., Inc.,* 286 B.R. 137, 140 (Bankr. W.D. Mo. 2002) (emphasis added) (footnotes omitted). As of the Petition Date, the Prepetition Lenders were owed $115 million. The Appellants' reclamation claims verified by the Debtor in the Reclamation Claims Report and not contested by the Appellants were

| | |
|---|---|
| Yenkin-Majestic Paint Corp. | $107,612 |
| Mississippi Lime Co. | $143,353 |
| Valspar Corp. | $203,989 |

There is no question in this case that if any of the Appellants chose (or were permitted) to obtain possession of their goods and were required to pay the DIP Lenders (or Prepetition Lenders for that matter) an amount sufficient to satisfy the outstanding lien at the time, that none of the Appellants would have come away with any proceeds. "[A] seller's right to reclaim goods [under state statute substantially similar to U.C.C. § 2-702] only extends to the particular goods it sold to the buyer. Thus, its reclamation rights only extend[] to the goods or its traceable proceeds." *In re Bridge Info. Sys., Inc.*, 288 B.R. 133, 138 (Bankr. E.D. Mo. 2001) (citing *Pester Ref. Co.*, 964 F.2d at 847).

In *Pester Refining Co.*, the Court of Appeals for the Eighth Circuit rejected the reclaiming seller's argument "that the [reclamation] claim is worth full value because the secured creditors have been satisfied." *Pester Ref. Co.*, 964 F.2d at 847. The Eighth Circuit found that this argument "ignores the possibility that [the secured creditor's claims] were satisfied *by the goods to be reclaimed*, rather than by other [debtor] assets, in which case the right to reclaim would be extinguished (rendered valueless) under state law." *Id*. at 847 (emphasis in original).

We find that the bankruptcy court did not abuse its discretion. The Appellants are not entitled to a lien or administrative expense status with respect to their reclamation claims. That result may be harsh. However, in this case, the Post-Petition Financing

Order grants the DIP Lenders a superpriority position. That order has not been appealed and is a final order. Further, Appellants were in a position at the time the goods were delivered to the Debtor to more adequately protect their interests by retaining and perfecting a purchase money security interest in the goods sold and notifying the secured creditors of their security interest. They chose not to do so and therefore, lost the right to prevent the commingling and use of their products so that it is now impossible to determine whose inventory remains in the Debtor's possession. *See Steinberg's,* 226 B.R. at 11 ("reclaiming seller could always have availed itself of greater protection by procuring a purchase money security interest on the subject goods"); *see also Wathen's Elevators, Inc.*, 32 B.R. at 923 ("the UCC presents the seller the possibility of complete protection through a different medium [rather than the reclamation process], the purchase money security interest."); *U.S. Billiards Co., Inc. v. Greenberger (In re Bensar Co., Inc.)*, 36 B.R. 699, 704 (Bankr. S.D. Ohio 1984); U.C.C. §§ 9-107, 9-312(3).

Appellants' Additional Arguments: We find that Appellants' additional arguments are also without merit.

A. Due Process and Procedural Deficiencies: Appellants assert that they did not receive adequate notice of the hearing, that the relief sought required an adversary proceeding and that they were not allowed adequate discovery. These arguments are all without merit. The Reclamation Procedures Order specifically provided:

> (f) Following the determination of all of the Vendors' Reclamation Claim Amounts, . . . *the Debtors may commence further proceedings to determine the extent to which the Reclamation Claim Amounts are subject to further defenses by reason of liens granted to the Debtors' secured creditors.* In the alternative, the Debtors may propose to resolve such issues through a proposed plan of reorganization that specifies the extent to which the Reclamation Claims shall be treated as allowed administrative expense priority claims.

(Emphasis added). This language specifically anticipates that there may be additional proceedings challenging the reclamation claims. Appellants were on notice of such and cannot now assert that they were surprised because the Debtor determined it was in its

14

best interest to take advantage of rights specifically reserved to it by the Reclamation Procedures Order. Courts have ruled on motions, complaints or adversary proceedings when considering reclamation issues and the "Sixth Circuit has not directly addressed the issue of whether reclamation claimants are required to file an adversary proceeding or some other [proceeding], such as a motion or complaint." *In re McLouth Steel Prods. Corp.*, 213 B.R. at 987; *see also Quality Stores*, 289 B.R. at 338 (in similar factual situation, the court indicated that the reclamation procedures order granted no substantive rights and debtor acted consistently with that order when it filed a motion for determination that reclaiming sellers' reclamation claims were not entitled to administrative expense priority status). Likewise, the Debtor here filed a motion to put the value and status of Appellants' reclamation claims at issue before the bankruptcy court. Such action was contemplated by the Reclamation Procedures Order.

With respect to the Appellants' contention that they were not permitted to perform discovery, the bankruptcy court notes that no discovery requests were served by the Appellants. The bankruptcy court further stated

> Although several of the Objecting Vendors argued that they should be allowed to take discovery as to the "good faith" of the Prepetition Lenders and the lenders under the DIP Facility, they did not identify any question as to such "good faith" that would warrant such discovery. *See e.g. In re Steinberg's, Inc.* 226 B.R. 8, 11-12 (secured creditor who enforces security agreement "in a manner consistent with the clear terms thereof" acts in good faith; discovery not proper unless reclaiming seller shows "some basis on which to question" the secured creditor's good faith); *In re Wathen's Elevators, Inc.*, 32 B.R. 912, 920-21 (Bankr. W.D. Ky. 1983) ("good faith" only requires honesty and reasonable commercial standards; secured creditor's alleged "knowledge" of reclamation demands is irrelevant to good faith); *In re Arlco, Inc.* 239 B.R. 261, 271-72.

Likewise, the Appellants' have not made any arguments in this appeal setting forth a basis for permitting them to engage in a fishing expedition under the guise of permitted discovery.

B. <u>Judicial Estoppel</u>: Appellants also assert that the Debtor is estopped from asserting that the Appellants are not entitled to the remedy required under § 546(c) based on the language of the Reclamation Procedures Order. Appellants assert that the Debtor's

15

basis for seeking the Reclamation Procedures Order was that it would be "impossible or impractical to segregate and return such goods at this time." Therefore, Appellants argue that judicial estoppel should bar the Debtor "from later arguing their consumption of the very goods which Appellants were enjoined from recovering under the Reclamation Procedures Order provides a basis to deny Appellants' reclamation claims administrative expense priority status." Appellants cite *Quality Stores* for the rule of judicial estoppel:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Quality Stores*, 289 B.R. at 338 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, (2001) (citations omitted)).

Appellants argue that

> Nothing in the Reclamation Procedures Motion or the subsequent order suggested that while the reclaiming creditors were prevented by court order from taking steps to preserve their rights, the ordinary course turnover of inventory during the interim would be used by the Debtors to defeat reclamation claims. While Debtors did reserve the right to raise further defense by way of liens granted to the Debtors' secured creditors, the implication was that such defense would be raised only in the event that the Debtors' secured creditors proved to be *undersecured*[.]

Judicial estoppel is not appropriate in this case. The Debtor has consistently asserted that the reclamation claims had no value and were not entitled to a remedy pursuant to § 546(c) because there was a priority floating inventory lien. Debtor's motion for the reclamation procedures order explains that

> the Reclamation Demands are subject to two separate sets of defenses. The first group of defenses are those that relate to the specifics of the individual Reclamation Demands (such as the timeliness of notice, the condition of the goods at the time notices were received, etc.) The second group of defenses relate to the inventory lien that the Debtors granted in favor of their secured lenders. Under applicable law, these liens create rights that are superior to the rights of reclamation claimants and give rise to defenses to the Reclamation Demands.

16

The Reclamation Procedures Order itself provides: "the Debtors may commence further proceedings to determine the extent to which the Reclamation Claim Amounts are subject to further defenses by reason of liens granted to the Debtors' secured creditors."  The Debtor also produced a letter dated February 13, 2001, sent to Yenkin-Majestic's counsel prior to entry of the Reclamation Procedures Order which stated:

> we are not in a position to stipulate that any reclamation claimants actually have allowed claims, or as to how those claims will be treated.  This is primarily because of the inventory liens held by the bank lenders.  These inventory liens constitute defenses to all of the reclamation claims that have been made.  Because of those liens, it is premature to discuss whether any reclamation claimants will have allowed claims, or how those claims would be treated.

In *Quality Stores*, the court faced a similar request for judicial estoppel.  The court denied the request, stating:

> The Reclamation Procedures Order granted no substantive rights and, by entry of that order, no party prevailed.  By filing the Substantive Reclamation motion, the Debtor acted consistently with the requirements of the Reclamation Procedures Order.  Any argument that this court should exercise discretionary judicial estoppel to bar a determination of the merits constitutes an enormous stretch of this theory.

*Id*. at 338.

The same is true in the present case.  Nothing in the Reclamation Procedures Order substantively determined that any reclamation claimant had an allowed claim or was entitled to a remedy pursuant to § 546(c).  The Reclamation Procedures Order specifically noted that the Debtor would assert the bank lenders liens' as defenses to the reclamation demands.  Moreover, nothing in the order implies that this defense would only be used if the bank lenders were undersecured.  Even upon making a valid reclamation claim outside of bankruptcy a vendor is not entitled to the return of his goods if there is a superceding priority floating inventory lien.  In such a case, the secured creditor is entitled to be paid from those goods.  If a vendor is allowed to repossess the goods it is subject to the priority secured creditors' lien.  In this case, the bank lenders had better rights in the goods even at the time the reclamation demand was made.  Accordingly the  Reclamation Procedures Order did not reduce Appellants' rights.  The only reason consumption of the goods is at

17

all an issue, is that if, by chance, there were traceable goods and/or proceeds after the secured creditors were paid in full, then and only then, would Appellants have a reclamation claim of any value.  In this case, there are no traceable goods or proceeds remaining.

      C.  Marshaling of Assets:  The Appellants also argue that they were entitled to request or require a marshaling of the Debtor's assets to protect their reclamation claims. Marshaling of assets applies "when a senior secured creditor can collect on its debt against more than one property or fund held by the debtor but a junior *secured* creditor can only proceed against one of those sources."  *Arlco*, 239 B.R. at 274 (emphasis added). Assuming certain elements are met, the process then requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit.  However, as found by the bankruptcy court in *Arlco*, Appellants do not even meet the first requirement because they are not secured creditors and unsecured creditors cannot invoke the equitable doctrine of marshaling.  *See Arlco,* 239 B.R. at 274; *see also In re Gibson Group, Inc.*, 151 B.R. 133, 134-35 (Bankr. S.D. Ohio 1993) ("majority rule . . . denies unsecured creditors standing to invoke the doctrine of marshaling.")

      In any event, there were 37 reclaiming sellers initially involved in this case.  If the Debtor was required to use assets other than those of the Appellants' first, whose should it use?  What other vendor's assets should be consumed first with the result that a different vendor's reclamation claim was rendered without value?  The Appellants' argument that rather than using its inventory in the ordinary course of business the Debtor should have picked and chosen which vendor's inventory should be protected at the expense of other unsecured creditors flies in the face of the policies behind the Bankruptcy Code prohibiting similarly situated creditors from being discriminated against and providing for an orderly distribution of estate assets.

      The Appellants were not entitled to require the Debtor to use the collateral of other vendors first in an effort to preserve the value of the Appellants' reclamation claims.

18

## V. CONCLUSION

For the reasons stated above, we AFFIRM the decision of the bankruptcy court.

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge, dissenting. I agree with my colleagues that, as an initial matter, the Appellants' rights can be no greater in bankruptcy than they would have been outside of bankruptcy. I further agree that, pursuant to the Post-Petition Financing Order, the claims of the Appellants were subordinated to the liens of the DIP Lender and that the value of the Appellants' claims cannot exceed the value of those claims outside of bankruptcy. Because I believe that the reclamation claims were not extinguished by the Post-Petition Financing Order, and thus that the bankruptcy court erred in failing to assign them administrative expense or junior lien status as of the date of demand, and further, because I believe that the bankruptcy court erred in failing to require that the Debtor seek its requested relief by way of adversary proceeding, I respectfully dissent, and would remand this case to the bankruptcy court for further proceedings.

It is apparently undisputed that as of the date of the filing of the bankruptcy petition, the Debtor was indebted to the Prepetition Lenders in the maximum amount of $115 million and that the indebtedness was secured by inventory with a value of $245 million. The claims of the Prepetition Lenders were over-secured in the amount of $130 million. The Appellants made timely reclamation demands at or near the date of the filing of the petition. Pursuant to the claims liquidation process provided for in the Reclamation Procedures Order, reclamation claims in the approximate amount of $2.9 million were validated by the Debtor as supported by goods that were (i) in the possession of the Debtor, (ii) specifically identifiable, and (iii) unconverted as to form, in each case as of the date on which the reclamation demand was received by the Debtors.

Pursuant to the Post-Petition Financing Order, the Prepetition Lenders were paid in full, and the DIP Lender was granted superpriority status pursuant to § 364(c) of the Bankruptcy Code and a floating lien upon all inventory and proceeds with priority over all administrative expense claims including reclamation claims.

Some two years later, at the hearing on the Debtor's Reclamation Motion, the Debtor offered proof that following validation of the Appellants' claims, all goods subject to those claims had been consumed in the manufacturing process, the final products sold,

and the proceeds paid to the DIP Lender. The Appellants argued that the Prepetition Lender was over-secured at the time their demands were made, but were unable to offer proof as to the status of the security interests held by the DIP Lender. Rather, the Appellants argued that the Debtor should have filed an adversary complaint to determine the extent, validity and priority of their claims, which would have given them the opportunity to gather evidence about the liens through discovery. The bankruptcy court overruled the Appellants' objections and granted the Debtor's motion. The court held that reclaiming sellers have no greater rights in bankruptcy than they hold under state law, and that under applicable state law, a seller's rights are exclusively limited to recovery of goods sold. Inasmuch as the goods subject to the Appellants' reclamation demands were consumed by the debtor in possession in the manufacturing process, they were no longer available for recovery, and the sellers' rights were extinguished. Thus, as the sellers had no rights under state law, they had no right to a priority claim under bankruptcy law.

The bankruptcy court failed to recognize that, even under state law, reclamation claims can extend to identifiable proceeds of reclaimed goods sold to satisfy a prior security interest. Further, the court failed to recognize that the Bankruptcy Code specifically provides a substitutionary remedy for reclaiming sellers whose goods are to be consumed in the administration of a bankruptcy estate. Upon a showing of the validity of the reclaiming sellers' claims, the bankruptcy court should have granted the reclaiming sellers an administrative claim or lien junior to the DIP Facility, while leaving the determination of the value of the claims to a later, meaningful time.


**A.**

At the time of their reclamation demands, the Appellants had claims under Uniform Commercial Code § 2-702 that were supported by existing and identifiable goods in the possession of the Debtor. At the time of demand, there was more than adequate inventory to pay the Prepetition Lender's claim without resort to the goods subject to the reclamation demands. As such, unless the prior secured claims automatically extinguished the reclaiming sellers' claims, proceeds from the sale of the Debtor's inventory could have

21

satisfied both the Prepetition Lender's claim and the Appellants' claims. *See United States v. Westside Bank*, 732 F.2d 1258, 1265 (5th Cir. 1984) (Foreclosure by a secured creditor does not cut off the rights of a reclaiming seller to identifiable proceeds not needed to satisfy prior liens.).

Under the Uniform Commercial Code, the rights of a reclaiming seller are not extinguished by, but are inferior to those of a secured creditor and superior to those of the buyer's general unsecured creditors. *See Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.*), 964 F.2d 842, 845-46 (8th Cir. 1992). Outside of bankruptcy, in the event of liquidation, good faith would require the secured creditor to liquidate its collateral in such a way as not unnecessarily impair the rights of junior lien holders or reclaiming sellers. *Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.),* 100 B.R. 1008, 1014 (Bankr. N.D. Ill. 1989). In that event, if the secured creditor were over-secured, junior lien holders and reclaiming sellers could expect to be paid from the proceeds of goods subject to their interests ahead of unsecured creditors. *Westside Bank*, 732 F.2d at 1265; *In re Victory Markets, Inc.*, 212 B.R. 738, 743 (Bankr. N.D.N.Y. 1997); *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group)*, 74 B.R. 250, 253 (N.D. Ill. 1987). *See also* 4 White and Summers, *Uniform Commercial Code* § 32-10, n.29 (West 5th ed. 2002).

Similarly, in the bankruptcy context, Bankruptcy Code section 546(c) makes a trustee's or debtor in possession's rights subordinate to those of a reclaiming seller. That section specifically empowers a bankruptcy court to permit a debtor in possession to consume goods subject to a reclamation demand in its ongoing business, provided that the rights of the reclaiming seller are protected. In exchange for the debtor in possession's use of goods subject to reclamation, reclaiming sellers are granted administrative expense or junior lien priority. Section 546(c)'s grant of priority is a substitutionary remedy. It substitutes a priority claim for the reclaiming seller's interest in the goods sold, and thus permits a debtor in possession to continue in business without having to return goods subject to reclamation. This remedy is not available in addition to reclamation rights, but in lieu of turning over the property. In effect, the Bankruptcy Code treats the valid right of

reclamation as a perfected security interest or lien. *See* 11 U.S.C. § 101(37); *see also Westside Bank*, 732 F.2d at 1265.

Pursuant to section 546(c)(2), once the Appellants established the *validity* of their reclamation claims – that is that the claims were supported by goods that were in the possession of the Debtors, specifically identifiable, and uncontraverted as to form, as of the date on which the reclamation demand was received by the Debtors – their right to protection in the event that the debtor in possession sought to use the goods was established. Because the reclamation claims were specifically subordinated to the DIP Lender by the Post-Petition Financing Order, the *value* of those claims remained in question. Pursuant to section 546(c)(2), they should have been treated as junior liens, subordinate to the lien of the DIP Lender. The value of those liens then would have been determined at an appropriate time, such as in connection with the confirmation of a plan, or a sale of assets outside of the ordinary course of business.

The rights of reclaiming sellers are fixed as of the demand for reclamation. *In re Victory Markets, Inc.,* 212 B. R. at 744. Satisfaction of a secured creditor's *under-secured* claim may reduce the value of any recovery pursuant to those rights, even to zero, but cannot extinguish those rights. *Id.* at 743 ("If the secured creditor's rights are superior to the seller's, the seller is left with a nonpriority unsecured claim as to the value of goods subject to the superior secured creditor's claim, and a right of reclamation as to the goods or value which are in excess of the creditor's claim."). *See also Matter of Reliable Drug Stores, Inc.*, 70 F.3d 948, 950 (7th Cir. 1995) ("How much a particular reclamation claim is worth, once § 546(c)(2)(A) transmutes it into an administrative claim, is a question distinct from the 'validity' of the reclamation claim."). In this case, however, it appears that the claims of the Prepetition Lenders were *over-secured,* and that the claims of the DIP Lender were also, at least initially, *over-secured.* The Appellants were not permitted to determine whether the claims of the DIP Lender were over-secured at the time of the hearing on the Reclamation Motion, and it appears that time might have been an artificial one for determining the value of the reclamation claims in any event. The claims should

have been evaluated in connection with some proposed disposition of the inventory, such as a plan or sale.

Once the validity of the reclaiming sellers' claims had been established, the bankruptcy court erred in failing to provide the reclaiming sellers a remedy in exchange for the use of their goods. In this case, in which the Post-Petition Financing Order provided for the subordination of reclamation claims, the most appropriate substitutionary remedy would appear to have been the securing of the claims by a junior lien. In that event, if at some later time it appeared that the assets securing the DIP Facility were inadequate, then the value of the Appellants' liens might have been reduced or even eliminated. The value of a reclaiming seller's claim need not be fixed as of the granting of the substitutionary remedy, but clearly the priority of these claims over general unsecured claims (and over a debtor in possession as hypothetical lien creditor) is to be established pursuant to section 546(c) before a debtor in possession is permitted to use goods subject to reclamation.


**B.**

Both Yenkin-Majestic Paint Corporation and Mississippi Lime Company urged the bankruptcy court that the Debtors' motion presented questions as to the extent, validity and priority of liens and sought declaratory relief, and thus should be treated as an adversary proceeding, which would have provided them an opportunity for discovery. This issue was properly preserved for appeal. Despite Debtor's arguments to the contrary, the Debtor's motion clearly sought the determination of the extent, validity and priority of the Appellants' claims and sought a declaration that those claims were generally unsecured. As such, the relief sought should have been brought by adversary complaint. *See* Fed. R. Bankr. P. 7001. The bankruptcy court erred in making determinations about the value of the Appellants' liens outside of an adversary process.

**CONCLUSION**

The bankruptcy court erred in permitting the Debtor to consume goods subject to the reclamation claims of the Appellants without first protecting those rights by granting the Appellants a lien pursuant to section 546(c)(2). The court further erred in determining the value of the Appellants' claims in connection with the Debtor's motion rather than pursuant to adversary proceeding. Accordingly, I would reverse the decision of the bankruptcy court and remand this case for further proceedings consistent with this opinion.